D. E. BELL et al., Plaintiffs,

v.

The CHESAPEAKE AND OHIO RAILWAY COMPANY, a corporation, and The United Transportation Union, an unincorporated labor organization, Defendants.

Civ. A. No. 2866.

United States District Court,
S. D. West Virginia,
Huntington Division.

March 7, 1973.

Walter W. Burton, Thomas S. Lilly, Princeton, W. Va., for plaintiffs.

William C. Beatty, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., for defendant Chesapeake & Ohio R. Co.

Donald R. Wilson, Preiser & Wilson, Charleston, W. Va., for defendant United Transportation Union.

CHRISTIE, Chief Judge:

The plaintiffs, employees and former employees of the defendant The Chesapeake and Ohio Railway Company (C & O) and members or former members of the defendant United Transportation Union (U.T.U.), complain in this action that the defendant railroad and the defendant union have violated certain provisions of the collective bargaining agreement entered into by those two parties and that the defendant union has violated certain provisions of its own constitution, which alleged violations of the bargaining agreement and constitution have adversely affected their seniority rights and job classifications and have resulted in termination of employment for some of the plaintiffs. The plaintiffs assert that the jurisdiction of this court to resolve the dispute and to provide a remedy for the alleged wrongs is found in Section 301 of the Labor-Management Relations Act, 29 U.S.C. Section 185(a). The defendants, however, contend that the provisions of Section 301 do not apply to the dispute between these parties and that this court lacks jurisdiction over the subject matter of the dispute. Accordingly, both defendants have moved for an order dismissing the action pursuant to the provisions of Rule 12(b) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

The facts giving rise to the present dispute may be summarized as follows:

On August 28, 1963, the Congress of the United States passed Public Law 88–108 authorizing the establishment of an Arbitration Board to provide a means of settling a labor dispute between certain railroad carriers, including C & O, and employees of those carriers, including the plaintiffs. Among others, one of the purposes of the Board was that of resolving the disputes then existing between the railroads and the railroad unions concerning the use of firemen on trains operating with power other than steam power. Pursuant to such authority, the Arbitration Board subsequently rendered an award on November 25, 1963, which came to be known as "Award 282," and in which the Board set forth specific rulings concerning, among other things, employment rights of railway firemen or helpers. The Arbitration Board set up various classifications of firemen in Award 282 based primarily on length of service and rate of pay. With reference to the issues involved in the present litigation, the classifications of C(2), C(3), and C(6) firemen are pertinent. The plaintiffs are classified as C(2) or C(3) firemen or as "new-hires," the latter being employees hired subsequent to the rendition of Award 282. Plaintiffs complain of their treatment vis-a-vis the C(6) firemen, asserting that as a consequence of a breach of the collective bargaining agreement and the union constitution, the C(6) firemen received seniority rights superior to the plaintiffs.

Without going into any more detail than is necessary for an understanding of the issues involved in this case, a review of the record before the court establishes the following background to the present dispute: Those plaintiffs in the present suit classified as C(2) and C(3) firemen on the date of Award 282 were, following the decision of the Arbitration Board, terminated from their employment with C & O. At the same time, a number of firemen classified C(6) by the Arbitration Board were terminated or transferred out of the division in which they were employed. Thereafter, the plaintiffs, both C(2) and C(3) firemen and new-hires, were reemployed or hired by C & O, however, their seniority dated, in the case of the C(2) and C(3) firemen, from the date they were rehired.

Subsequent to the termination or transfer of the C(6) firemen, a question was raised by the Brotherhood of Locomotive Firemen and Enginemen (B.L.F. & E.) with regard to the propriety of the manner of the transfer or termination of these firemen by the C & O. Questions were submitted to the reconvened Arbitration Board and on February 20, 1966, the Board answered these questions in such a manner as to indicate that the C(6) firemen had been improperly terminated and transferred. Thereafter, in April of 1966, the B.L.F. & E. filed a grievance with the C & O requesting that the C(6) firemen be returned to service with restoration of their original seniority date as firemen and reimbursement for all time lost, including any relocation expenses incurred. This grievance was processed through the various management levels of C & O, however, the parties were unable to reach agreement and the dispute was referred to a Public Law Board for decision in accordance with the provisions of the Railway Labor Act, 45 U.S. C. Section 151 et seq. During the pendency of this grievance, on January 1, 1969, various railroad unions, including the Brotherhood of Locomotive Firemen and Enginemen, merged to form the United Transportation Union and this union then became the bargaining representative of the members of the B.L.F. & E., including the plaintiffs. As such bargaining representative, the U.T.U. assumed responsibility for processing the grievance with regard to the C(6) firemen. While that grievance was

pending before the Public Law Board, members of Local 1046 of the U.T.U. (formerly Local 675 of the B.L.F. & E.) requested that the grievance be withdrawn, primarily because of the fact that the C(6) firemen would return to work with their original seniority, whereas the seniority of the C(2) and C(3) firemen dated only from the day they had returned to work.

On May 18, 1970 the General Chairman of the General Committee of Adjustment of the U.T.U. and officials of the C & O reached a compromise agreement with respect to the C(6) firemen. That agreement provided, among other things, that the C(6) firemen would "be returned to service as firemen on the Huntington Division with their original seniority date as additional firemen are needed, provided they meet the employment standard of the carrier, including physical examination." The membership of Local 1046 objected to this compromise agreement and appealed the action of the General Chairman through the various levels of appeal within the union. However, on January 22, 1971, the Union Board of Appeals upheld the decision of the General Chairman to enter into the compromise agreement and denied the appeal of Local 1046. Thereafter, the plaintiffs filed suit in this court claiming that the action of the C & O was in violation of the collective bargaining agreement between C & O and U.T.U., and that the action of the U.T.U. violated the bargaining agreement as well as the union constitution and the Unification Agreement made in 1969 when the various railroad unions merged to form the U.T.U.

## JURISDICTION OF THIS COURT

Although this court might speculate with regard to the various theories upon which the plaintiffs could have based their claims against the C & O and the U.T.U., it is clear from the pleadings and their briefs submitted in opposition to the motions to dismiss that they rely solely upon Section 301 of the Labor-Management Relations Act, 29 U.S.C. Section 185, in asserting this court's jurisdiction over the subject matter of the action. However, a careful review of the statutory provisions of the Labor-Management Relations Act, 29 U.S.C. Section 141 et seq., and of the cases construing that Act, makes it abundantly clear that Section 301 of the Act does not give this court jurisdiction of plaintiffs' claims against the defendants.

In determining whether this court can exercise jurisdiction over the claims of the plaintiff railway employees against the railroad and the railroad union under the provisions of Section 301 of the Act, it must first be determined whether these parties are encompassed within the definitions of "employer", "employees", and "labor organizations" as those terms are used in the Act. Section 301, in establishing jurisdiction in the federal district courts, limits that jurisdiction to suits for violation of contracts between employers and labor organizations or suits between labor organizations in industries affecting commerce as those terms "are defined in this chapter." 29 U.S.C. Section 185(a). "This chapter" refers, of course, to the provisions of the 1947 Act. That Act is composed of four subchapters. Subchapter II of the Act (Section 101 of the Labor-Management Relations Act) contains the original National Labor Relations Act as enacted in 1935 and as amended by the provisions of the Labor-Management Relations Act. It is in this subchapter that the terms "employer" and "employee" are defined. Thus Section 101 of the Labor-Management Relations Act, 29 U.S.C. Section 152(2) defines and limits the term employer as follows:

"The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include . . . any person subject to the Railway Labor Act, as amended from time to time, . . . ."

In defining the term employee, the same limitation with respect to the provisions of the Railway Labor Act is made and that term is defined in the following language in Section 152(3):

"The term 'employee' shall include any employee . . . but shall not include . . . any individual employed by an employer subject to the Railway Labor Act, as amended from time to time, . . . ."

In view of the fact that these definitions are set forth in the subchapter of the Labor-Management Relations Act of 1947 which originally made up the National Labor Relations Act of 1935, and the further fact that the provisions with regard to jurisdiction of the federal district courts over disputes with respect to breach of collective bargaining agreements, 29 U.S.C. Section 185(a), are set forth in Subchapter IV, it might be argued that the limitation with reference to persons subject to the Railway Labor Act does not apply to suits brought under Section 185(a) of Subchapter IV, but is merely a limitation with regard to the provisions of Subchapter II. Indeed the plaintiffs have made this argument. However, in Subchapter I of the Act of 1947, Section 142, 29 U.S.C. Section 142(3), it is specifically provided that the terms employer and employee, when used in the Labor-Management Relations Act "shall have the same meaning as when used in subchapter II of this chapter as amended by this chapter." Thus, there can be no doubt that employers and employees subject to the Railway Labor Act, as are the plaintiffs and the defendants in this suit, are excluded from the class of persons who are entitled to institute suit in the district courts under the provisions of Section 185(a).

In the few instances when this question has been presented to the courts, it has been held that common carriers, and the employees of common carriers, subject to the provisions of the Railway Labor Act, 45 U.S.C. Section 151 et seq., are precluded from bringing actions for breach of collective bargaining agreements under Section 301 of the Labor-Management Relations Act, 29 U.S.C. Section 185. In Brotherhood of Locomotive Firemen and Enginemen v. United Transportation Union, 471 F.2d 8 (6th Cir., 1972), the Brotherhood of Locomotive Firemen and Enginemen and the Switchmen's Union of North America and twenty-two local unions brought suit against the United Transportation Union, the Order of Railway Conductors and Brakemen, and the Brotherhood of Railroad Trainmen, claiming a breach of the unification agreement entered into when the Brotherhoods merged to form the United Transportation Union and asserting jurisdiction in the district court under Section 301 of the Labor-Management Relations Act. In affirming the dismissal of the action by the district court, the circuit court made the following remarks:

"Appellants contend that § 301 of the Labor-Management Relations Act should be held applicable to this dispute in spite of the express exception of railroad employees from the terms of the statute. We believe the statute must be read as clearly to the contrary (see 29 U.S.C. § 142(3); 29 U.S.C. § 152(3), (5)(1970)) and we find no case law which supports appellants' contention."

A similar result was reached in Bruno v. Northeast Airlines, Inc., 229 F.Supp. 716, 718 (D.C.Mass.1964), a case in which airline employees brought suit against their former employer and two unions to recover for the alleged breach of a collective bargaining contract. In holding that the court did not have jurisdiction under the provisions of Section 185(a) of the Labor-Management Relations Act, the court gave the following analysis of the interrelationships of the provisions of the Labor-Management Relations Act:

"It is true that Sec. 101 of the 1947 Act, read alone, gives rise to a certain

ambiguity as to the scope of the application of the definitions contained in it. Sec. 101 reenacts in an amended form the National Labor Relations Act. Hence, when Sec. 2 under Sec. 101 sets out the meaning to be given to terms 'when used in this Act' it may mean the definitions to apply to the whole of the 1947 Act or, as seems more likely, it may mean them to apply only to Sec. 101, the Act within the Act. However, Sec. 501 clears up an ambiguity so far as the terms 'employer' and 'employee' are concerned since it clearly makes the definitions contained in Sec. 101 applicable to the whole of the 1947 Act, including Sec. 301."

The result reached by these two courts receives support from the following dictum found in Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 376–377, 89 S.Ct. 1109, 1114, 22 L.Ed.2d 344 (1969):

"The NLRA came into being against the background of pre-existing comprehensive federal legislation regulating railway labor disputes. Section 2(2) and (3) of the NLRA, 29 U.S.C. § 152(2), (3), expressly exempt from the Act's coverage employees and employers subject to the Railway Labor Act. And when the traditional railway labor organizations act on behalf of employees subject to the Railway Labor Act in a dispute with carriers subject to the Railway Labor Act, the organizations must be deemed, *pro tanto*, exempt from the National Labor Relations Act. See NLRA Section 2(5), 29 U.S.C. § 152(5)."

In view of the fact that the present action is not sustainable under the provisions of Section 301 of the Labor-Management Relations Act, 29 U.S.C. Section 185(a), and that Section 185 was the sole basis upon which jurisdiction in this court is asserted, the motions of the defendants C & O and U.T.U. to dismiss must be granted.