**Walter E. CORBIN, Plaintiff,**

v.

**PAN AMERICAN WORLD AIRWAYS, INC., a corporation, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 655, Defendants.**

**No. C–77–0029–CBR.**

United States District Court,
N. D. California.

May 25, 1977.

Robert H. Cashman, San Francisco, Cal., for plaintiff.

Robert S. Venning, Robert T. Haslam, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendant Pan American.

Kenneth N. Silbert, Brundage, Beeson, Tayer & Kovach, San Francisco, Cal., for defendant Teamsters.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RENFREW, District Judge.

This action stems from the events surrounding plaintiff's demotion nearly eight years ago on October 31, 1969. Plaintiff alleges that the demotion and other continuing acts of defendant Pan American World Airways, Inc. ("Pan Am"), violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 et seq., because those acts discriminated against him on the basis of race. He brings a second claim pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, alleging that Pan Am breached its collective bargaining agreement with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 655"). Plaintiff brings a third claim pursuant to 28 U.S.C. § 1337 alleging that Local 655 breached its statutory duty under the LMRA, 29 U.S.C. § 141 et seq., to represent him fairly in union grievance proceedings. Defendant Pan Am filed a motion for summary judgment which has been joined in by defendant Local 655.

## I. FACTUAL BACKGROUND

Plaintiff has been employed by Pan Am since April 20, 1966. At various times during the past eleven years, he has served as either a Service Supply Clerk ("Clerk") or a Lead Service Supply Clerk ("Lead Clerk"). Although plaintiff now serves as a Lead Clerk, he contends that because of his race, he was wrongfully denied a Lead Clerk's position from November 1969 until his December 1976 promotion.

Promotion to the position of Lead Clerk is governed by the policies contained in Article 9 of the Union Agreement between Pan Am and Local 655.[1] In order to appreciate fully the nature of plaintiff's complaint, an understanding of the promotions policy is required. Article 9 sets out detailed procedures whereby any employee may bid for a job classification of higher rank when it is posted as a vacancy by the company. After a vacancy is posted for five days, the position is awarded to the "most senior qualified bidder." According to Pan Am's Director of Employee Relations at San Francisco International Airport, because virtually every Clerk satisfies the minimum qualifications required of a Lead Clerk, in practice, the higher position is simply awarded to the most senior employee who bids within the five days.

In December 1967, plaintiff bid on a Lead Clerk opening and was awarded the position in accordance with the Article 9 procedures. But, on October 31, 1969, faced with adverse economic conditions, Pan Am demoted plaintiff and the three other most junior Lead Clerks in an effort to consolidate its Supply Service. Subsequent to the 1969 demotion plaintiff did not bid on any

---

1. Article 9 provides in relevant part:

   "Within each Field promotions will be made by selection of the most senior qualified bidder in accordance with the procedure hereinafter set forth:

   "(a) All vacancies and all new jobs expected to be of more than thirty (30) days duration in the classifications covered by this Agreement will be bulletined. Such bulletins will be posted no more than five (5) days after the vacancy occurs, and remain posted for five (5) days at the Field where the vacancy exists. The bulletin will state the number of jobs to be filled, scheduled location, the classification, and the rate of pay of each job to be filled.

   "(b) Any employee at the Field where a vacancy exists may bid for job classification of higher rank than classification currently held. An employee bidding for more than one (1) vacancy shall indicate the order of preference on each bid, and, if he is the senior qualified bidder for more than one (1) vacancy, he shall have the opportunity to qualify only for the job ranked highest in his preference. All bids will be made in two (2) written copies with one (1) copy furnished to the Company and one (1) copy furnished to the Local Union Chairman.

   "(c) Qualifications for promotion shall be established by the Company, and shall include reasonable measurable standards such as ability, quality and performance of work. In the event that the senior employee is not selected for promotion, he shall be furnished reasons therefore in writing prior to posting by the Company, and the Union will be so notified.

   "(d) Following selection of the successful bidder, the Company will make appropriate announcement thereof and post on the bulletin board, including seniority date."

Lead Clerk vacancy until July 6, 1976. At that time, plaintiff was denied the available position because a more senior employee also bid. On plaintiff's second bid since the demotion, made in December 1976, he was awarded the Lead Clerk's position which he currently occupies.

Plaintiff first challenged the legality of the demotion through the grievance procedures provided for in the union agreement. Along with two of the other demoted Lead Clerks, plaintiff instituted a grievance action contending that their demotions breached the collective bargaining agreement and that, although officially, demoted, they were still being required by Pan Am to perform the tasks of a Lead Clerk but for a Clerk's salary. A System Adjustment Board, composed of two union and two company representatives as called for by Article 19 of the union agreement, deadlocked on whether to uphold the grievance. After further unsuccessful efforts to resolve the dispute, an impartial referee was appointed to reach a final decision. The referee's September 5, 1974, decision upheld the demotions as valid under the collective bargaining agreement. However, the referee did find that plaintiff continued to perform as a *de facto* Lead Clerk for thirty days following his 1969 demotion and ordered that he be compensated accordingly. The other two grievants were not awarded any back pay.

On April 22, 1975, approximately seven months after the referee's final decision, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), contending that he had been demoted and denied reinstatement to the position of Lead Clerk because of his race, that he continued to perform in a Lead Clerk's capacity at a Clerk's rate of pay and that Local 655 had failed to provide him with fair representation during the grievance procedures because of his race. On October 19, 1976, plaintiff received a "Right to Sue Letter" from the EEOC. This suit was then filed on January 5, 1977.

## II. *LMRA CLAIMS*

■ Plaintiff's second and third claims against Pan Am and Local alleging violations under the LMRA, 29 U.S.C. § 141 *et seq.*, must be dismissed for lack of jurisdiction. Although overlooked by the parties, it is well established that labor disputes between air carriers and their employee unions are governed by the provisions of the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, as made applicable to air carriers by 45 U.S.C. § 181 *et seq. Dones v. Eastern Air Lines, Inc.*, 408 F.Supp. 1044, 1045–1046 (D.P.R.1975); *American Airlines, Inc. v. Transport Workers Union of America International, AFL–CIO*, 202 F.Supp. 806, 810 (S.D.N.Y.1962). As noted above, Article 19 of the Pan Am-Local 655 union agreement explicitly states that labor disputes are to be resolved pursuant to the provisions of the Railway Labor Act.

Federal courts do not have jurisdiction over actions brought pursuant to the LMRA, 29 U.S.C. § 141 *et seq.*, where the parties involved are common carriers and employees governed by the Railway Labor Act. *Brotherhood of Locomotive Firemen and Enginemen v. United Transportation Union*, 471 F.2d 8, 9 (6 Cir. 1972); *Dones v. Eastern Air Lines, Inc., supra*, 408 F.Supp. at 1046; *Bell v. Chesapeake and Ohio Railway Company*, 58 F.R.D. 566, 568–569 (S.D. W.Va.1973); *Bruno v. Northeast Airlines, Inc.*, 229 F.Supp. 716 (D.Mass.1964). The reason for the above rule is no mystery— the LMRA explicitly excludes employees and employers governed by the Railway Labor Act from its provisions. Section 2 of the LMRA, 29 U.S.C. § 142, provides:

"When used in this chapter—

\*   \*   \*   \*   \*   \*

"(3) The terms \* \* \* 'employer', 'employee', \* \* \* shall have the same meaning as when used in subchapter II of this chapter as amended by this chapter."

In subchapter II, section 101 of the LMRA, 29 U.S.C. § 152, provides:

"When used in this subchapter—

\*   \*   \*   \*   \*   \*

"(2) The term 'employer' includes any person acting as an agent of an employer,

directly or indirectly, but shall not include * * * any person subject to the Railway Labor Act, as amended from time to time * * *.

"(3) The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include * * * any individual employed by an employer subject to the Railway Labor Act, as amended from time to time * * *."

■ An employee governed by the provisions of the Railway Labor Act may assert a breach of the duty of fair representation against the union under that statute. *Steele v. Louisville & Nashville Railroad Co.*, 323 U.S. 192, 199, 65 S.Ct. 226, 89 L.Ed. 173 (1944); *Brady v. Trans World Airlines*, 401 F.2d 87 (3 Cir. 1966). And in certain cases where it is alleged that the employer has acted in conjunction with the union to discriminate against employees, the employer is properly joined in the action. *See Czosek v. O'Mara*, 397 U.S. 25, 29, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970); *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 328–329, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). But neither of these principles can be brought to bear in an action where plaintiff seeks to invoke jurisdiction under the LMRA. Accordingly, plaintiff's second and third claims will be dismissed for lack of jurisdiction.

### III. *TITLE VII CLAIMS*

Plaintiff alleges that defendant Pan Am discriminated against him on the basis of race by (1) reclassifying and demoting him

in 1969, (2) failing to promote him to Lead Clerk on at least four occasions when that position became available after 1969, and (3) requiring him to perform the same work as six non-black employees but for a lower rate of pay. Defendant Pan Am contends that plaintiff's Title VII claims must be either dismissed or disposed of by summary judgment because (1) plaintiff's EEOC claim was not filed within the 90-day statute of limitation in effect at the time of the alleged discriminatory act in 1969,[2] (2) Pan Am's failure to promote plaintiff until December 1976 was not racially motivated but was proper since prior to that date, plaintiff was never the "most senior qualified bidder", and (3) plaintiff fails to allege facts which state a valid claim of discriminatory compensation because of his race.

■ Although plaintiff previously submitted two of these Title VII claims to arbitration, he is entitled to a *de novo* review of the claims by the federal courts, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), which is set forth below.

### A. *Timeliness*

■ Plaintiff advances two arguments in support of his claim that the April 22, 1975 EEOC filing was timely. First, his Title VII claims allege continuing acts of discrimination by Pan Am thereby bringing his complaint within the statute of limitations. Second, EEOC's acceptance of his complaint and issuance of a "Right to Sue Letter" is indicative of the timeliness of the filing.

Timely filing of an EEOC charge within the prescribed statutory limits is a necessary prerequisite to the commencement of a court action under Title VII. *Smith v. Office of Economic Opportunity for the State of Arkansas*, 538 F.2d 226, 228 (8 Cir. 1976); *Collins v. United Air Lines, Inc.*, 514 F.2d

---

**2.** In 1969, Section 706(d) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(d), required a grievant to file a complaint with EEOC within 90 days after the alleged unlawful employment practice. The 90-day period was extended to 180 days by a 1972 amendment. The 180-day period is currently found in Section 706(e), 42 U.S.C. § 2000e–5(e). *See* Act of March 24, 1972, Pub.L.No.92–261 § 4(a), 86 Stat. 104, *amending* 42 U.S.C. § 2000e–5(d) and (e) (1964).

594, 596 (9 Cir. 1975). EEOC's decision to process a complaint is a factor to be considered in judging the adequacy of the filing, *see Cox v. United States Gypsum Company*, 409 F.2d 289, 291 (7 Cir. 1969), but most courts deem it appropriate to make an independent evaluation as to whether EEOC properly exercised jurisdiction over the complaint. *See Belt v. Johnson Motor Lines, Inc.*, 458 F.2d 443, 445 (5 Cir. 1972); *Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App.D.C. 69, 478 F.2d 979, 986 (1973), and cases cited therein. Thus, the Court will review *de novo* the timeliness of the charges filed by plaintiff to determine whether jurisdiction exists in this matter.

Where a plaintiff alleges claims which may be classified as "continuing" acts of discrimination, the complaint will not be barred by the statute of limitations contained in Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e).[3] However, a plaintiff may not circumvent the limitations period merely by labeling an act a "continuing" violation. *Tarvesian v. Carr Division of TRW, Inc.*, 407 F.Supp. 336, 340 (D.Mass. 1976); *Cisson v. Lockheed-Georgia Co.*, 392 F.Supp. 1176, 1182 (N.D.Ga.1975). Completed acts such as a termination through discharge or resignation, *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1234 (8 Cir. 1975); a job transfer, *Younger v. Glamorgan Pipe and Foundry Company*, 310 F.Supp. 195, 197 (W.D.Va.1969); or discontinuance of a particular job assignment, *Gordon v. Baker Protective Services, Inc.*, 358 F.Supp. 867, 869 (N.D.Ill.1973), are not acts of a "continuing" nature. Rather, a plaintiff must maintain that a pattern of

discrimination or an employment practice presently exists to perpetuate the alleged wrong. Plaintiff's claims of a repeated failure to promote and a denial of equal pay involve ongoing aspects of the employer-employee relationship. Viewing the allegations in the light most favorable to plaintiff, discrimination occurs with the receipt of each paycheck and the award of each Lead Clerk opening. Accordingly, on the facts of this case, these acts may properly be classified as acts of a "continuing" nature. *See Rich v. Martin Marietta Corporation*, 522 F.2d 333, 348 (10 Cir. 1975); *Moore v. Sunbeam Corporation*, 459 F.2d 811, 828 (7 Cir. 1972). Therefore, for jurisdictional purposes, the EEOC filing will be deemed timely, and the Court will review the merits of plaintiff's Title VII claims.

### B. *Motion for Summary Judgment*

Operating pursuant to its powers under Article 15[4] of the union agreement, on October 31, 1969, Pan Am reclassified and thereby demoted plaintiff in accordance with Article 8(c) of that agreement which states in relevant part:

"If a reduction in force is necessary at any Field, employees shall be reassigned, readjusted or laid off on a seniority basis to the extent they are qualified to fill the new assignment."

At the time of plaintiff's demotion, two white Lead Clerks and another black Lead Clerk were also demoted. Pan Am maintains that it followed the dictates of Article 8(c) by demoting the four men with the least seniority among the Lead Clerks.

3. Several Circuit Courts of Appeal have now acknowledged the "continuing" violation concept. *See Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1233–1234 (8 Cir. 1976); *Pacific Maritime Association v. Quinn*, 491 F.2d 1294, 1296 (9 Cir. 1974); *Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App.D.C. 69, 478 F.2d 979, 987 (1973); *Molybdenum Corp. of America v. EEOC*, 457 F.2d 935, 936 (10 Cir. 1972); *Bartmess v. Drewrys U.S.A., Inc.*, 444 F.2d 1186, 1188 (7 Cir. 1971).

4. Article 15 provides:
"The management of the Company and the direction of its employees, including the establishment of working conditions, the hiring, pro-

moting, demoting, and rehiring of employees, the suspending, the discharging or otherwise disciplining of employees, and the laying off and calling to work of employees in connection with any reduction or increase in working forces, are the exclusive functions of management to the extent that any of such matters are not otherwise covered or provided for in this Agreement; and provided that, in the exercise of such functions, the management shall not violate any provision of this Agreement or discriminate against any employee because of his membership in, or lawful activity on behalf of, the Union."

Plaintiff does not dispute that he had less seniority than the people who remained as Lead Clerks.

Pan Am has filed an affidavit from its Director of Employee Relations at San Francisco International Airport explaining that the 1969 demotions were "[d]ue to economic and business pressures" which the company was facing at that time. As further background information, Pan Am has filed a copy of the referee's decision from the union grievance proceedings which explains in greater detail the extensive changes which local management was required to make in the Supply Service in 1969. These supporting documents underscore the rationale for the 1969 demotions and give absolutely no hint that discrimination was a motivating factor. In his papers and affidavit, plaintiff alleges repeatedly that he was demoted because of his race. But he has failed to provide the Court with any specific facts to support the bare allegation of discrimination, nor does he dispute Pan Am's assertion that economic hardship precipitated the demotion.

In his second claim, plaintiff alleges that Pan Am discriminated against him by failing to promote him to Lead Clerk when that position became available on four occasions after the 1969 demotion. He argues that Pan Am could and should have exercised its powers under Article 15, *see* n. 4, *supra,* to promote plaintiff and it was because of his race that Pan Am chose not to do so. Pan Am responds that it has no power under Article 15 to promote an employee who does not bid for an opening. While Article 15 provides that promoting employees is an "exclusive function of management," it also provides that "in the exercise of such functions, the management shall not violate any provision of this Agreement." Pan Am contends that for the company to promote plaintiff to Lead Clerk where he did not enter a bid for the position would be a violation of Article 9

which explicitly requires that promotions "will be made by a selection of the most senior qualified bidder." Plaintiff offers no rebuttal to Pan Am's position other than the conclusory allegation that Pan Am does have this power under the agreement.

Plaintiff's third claim is that because of his race, Pan Am has required him to perform the same duties as six non-black employees but for a lesser rate of pay. When plaintiff raised this claim at the grievance proceeding, the referee concluded that plaintiff had performed as a *de facto* Lead Clerk for a period of thirty days after his demotion, but that this situation ended upon plaintiff's transfer to a different building. Pan Am relies on the referee's decision, which has been incorporated into the affidavit of the Director of Employee Relations, to demonstrate the lack of merit to plaintiff's claim of discriminatory intent and to show that plaintiff was not required by Pan Am to perform Lead Clerk duties.[5] The referee's decision states that:

> "[plaintiff] testified that he still 'felt' responsible for other's work though in reality he knew he was not. The Company is not liable for what Corbin may have felt but only for what in reality it required him to do."

In his affidavit, plaintiff supplies no facts to support his claim that Pan Am required him to perform the duties of a Lead Clerk. He again offers only conclusory allegations that he performs work identical to that of six non-black employees who receive Lead Clerk pay. Whether plaintiff performs the work of a Lead Clerk of his own accord is irrelevant to his claim that Pan Am required him to perform those functions.

■■■ On a motion for summary judgment, the moving party carries the burden of showing that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In addition,

---

**5.** The Supreme Cour' has stated that in its *de novo* consideration of an employee's Title VII claims, "[t]he arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." *Alexander v. Gard-* *ner-Denver Co.,* 415 U.S. 36, 60, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974). Therefore, Pan Am is entirely proper in referring the court to the referee's decision in support of its motion for summary judgment.

inferences to be drawn from the underlying facts must be drawn against the movant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). But, once the moving party meets the initial burden of proof, Rule 56(e) [6] of the Federal Rules of Civil Procedure requires the opposing party to respond with "specific facts showing that there is a genuine issue for trial." *See Adickes v. S. H. Kress & Co., supra,* 398 U.S. at 159–160, 90 S.Ct. 1598; *Lovable Co. v. Honeywell, Inc.,* 431 F.2d 668, 670–671 (5 Cir. 1970). Unless an opposing party takes advantage of Rule 56(f) [7] of the Federal Rules of Civil Procedure and files affidavits stating the reasons why "facts essential to justify his opposition" could not be presented, a failure to comply with Rule 56(e) is a proper ground upon which to grant summary judgment. *See Donnelly v. Guion,* 467 F.2d 290, 293 (2 Cir. 1972); *Robin Construction Company v. United States,* 345 F.2d 610, 613–614 (3 Cir. 1965).

The Court is convinced that Pan Am, as the moving party, has carried its initial burden of showing that there is no genuine issue as to any material fact. All of the facts presented by Pan Am pertaining to the 1969 demotion indicate that it was necessitated by economic hardship, was in accordance with the procedures of the union agreement, and was in no way premised on plaintiff's race. Second, the Court agrees with Pan Am's position that, under the agreement, it was powerless to promote plaintiff where he did not bid for any of the available positions. Finally, the facts presented by Pan Am indicate that plaintiff had been assigned the duties of a Clerk and not those of a Lead Clerk. He was not required to perform the duties of a Lead Clerk and was therefore properly compensated at a Clerk's salary rate by virtue of his assigned duties and not because of his race. Plaintiff has relied only upon the bare allegations of his complaint, reiterated in a conclusory fashion in his affidavit, thereby failing to meet the requirements imposed on the opposing party under Rule 56(e).

Accordingly, IT IS HEREBY ORDERED that defendant Pan Am's motion for summary judgment is granted as to plaintiff's Title VII claims.

IT IS HEREBY FURTHER ORDERED that plaintiff's second and third claims brought pursuant to the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.,* are dismissed for lack of jurisdiction.

IT IS HEREBY FURTHER ORDERED that counsel for defendants shall promptly prepare an appropriate form of judgment, obtain approval of counsel for plaintiff as to form, and submit it to the Court for execution.

6. Rule 56(e) of the Federal Rules of Civil Procedure provides:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

7. Rule 56(f) of the Federal Rules of Civil Procedure provides:

"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."