Caldwell GRAHAM and Tony
Olds, Plaintiffs,

v.

Robert M. ADAMS, Secretary of the
Smithsonian Institution, Defendant.

Civ. A. No. 85–0210.

United States District Court,
District of Columbia.

June 9, 1986.

Margaret Beller, Catherine M. Staley, Washington, D.C., for plaintiffs.

Asst. U.S. Atty. Patricia Carter, U.S. Atty.'s Office, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

Plaintiffs Caldwell Graham and Tony Olds are black males who went to work in 1951 and 1955, respectively, for the National Zoological Park ("the Zoo"), a division of the Smithsonian Institution ("the Smithsonian").[1] Graham was 64 years old and Olds was 53 when they filed this employment discrimination action. The plaintiffs allege race, sex, and age discrimination on the part of officials of the Zoo under 42 U.S.C. §§ 2000e—2000e–17 ("Title VII").[2]

In response to a reduction-in-force ("the RIF") notice issued by the Smithsonian on October 30, 1980, plaintiff Graham accepted under protest an offer of reassignment from his position as "Animal Keeper Foreman" (WS–7706–9, Step 5) to the position of "Animal Keeper Leader" (WL–7706–9, Step 5) at the Zoo. Although plaintiff Olds, who was also an Animal Keeper Foreman when the RIF notice was issued, was offered the same reassignment opportunity, he chose to retire from his job at the Zoo. The plaintiffs' former positions were "abolished" by the RIF.

The RIF became effective on December 12, 1980. The plaintiffs both filed timely administrative complaints on December 19, 1980, challenging the Smithsonian's action. Although the Smithsonian's Equal Employment Opportunity Commission ("the EEOC") conducted hearings during the next several years, it never reached a decision on the plaintiffs' discrimination claims. Because the EEOC failed to take agency action within 180 days from the date the administrative complaints were filed, *see* 42 U.S.C. § 2000e–16(c), Graham and Olds filed suit in this forum on January 22, 1985.[3] The plaintiffs seek "to be reinstated in the position[s] of animal collectors with back pay ... [and] training at the defendant's expense to enable them to compete for advancement." *Complaint,* pp. 3–4.

The matter before the Court concerns the defendant's motion to dismiss the Complaint (or for partial dismissal thereof) for failure to state a claim upon which relief can be granted, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In consideration of this motion, plaintiffs' opposition, and defendant's reply ("Supplemental Opposition") thereto, the Court concludes that dismissal (or partial dismissal) is inappropriate.

## DISCUSSION

The defendant's motion to dismiss takes a three-pronged attack on the plaintiffs' action. First, the defendant points out that the "complaint ... lists a litany of alleged incidents of discrimination other than the [RIF's] abolishment of the[ir] head keeper [*i.e.,* Animal Keeper Foreman] positions." Memorandum in Support of Defendant's Motion to Dismiss, or in the Alternative, for Partial Dismissal ("*Motion to Dismiss*") at 2 (citing *Complaint* ¶¶ 7 & 8). The defendant contends that "by their own admission, neither plaintiff contacted or filed an EEO administrative complaint for any of these incidents—some of which allegedly occurred up to ten years *before the RIF.*" *Motion to Dismiss,* at 2 (emphasis added). Thus, the defendant concludes that "[t]hese alleged incidents are ... outside the scope of this litigation because they have not been exhausted administratively." *Id.*

---

**1.** The Smithsonian is a trust instrumentality of the United States.

**2.** Although they fail to cite 29 U.S.C. § 633a(a) (Age Discrimination in Employment Act) in the complaint, it is obvious from their allegations that plaintiffs rely on this provision for their age discrimination claims.

**3.** Apparently the EEOC was conducting hearings right up until the time this lawsuit was filed. Thus, the administrative complaints were before the EEOC from December 19, 1980 until January 22, 1985.

Second, the defendant notes correctly that the "complaint contains allegations concerning the plaintiff[s'] nonselection for a position that opened up in the National Zoo's Front Royal, Virginia facility months *after the RIF*." *Id.* at 3 (emphasis added) (citing *Complaint* ¶ 7). In conjunction with the pre-RIF allegations argument, *supra*, the defendant maintains that these alleged post-RIF incidents are not properly before the Court, because although "[n]either plaintiff was selected for this position ...[,] *neither plaintiff contacted an EEO Counselor or filed an EEO complaint concerning this nonselection* [in March 1981]." *Motion to Dismiss*, at 3. The defendant's second attack on the complaint is thus based upon an additional exhaustion theory.[4]

Finally, in regard to the merits of the plaintiffs' case, the defendant contends, in essence, that the complaint fails to state a claim, because, in conjunction with the 1980 RIF, the plaintiffs "were offered substantially equivalent positions with no loss of grade or pay for two years." *Id.* at 2. In plaintiff Olds' case, the defendant argues the following:

> [h]is failure to mitigate damage [by refusing to accept the Animal Keeper Leader position and, instead, choosing to retire,] deprives him of a claim for which relief can be granted before this court, ... because, had he accepted defendant's unconditioned offer, he would have retained his salary and grade performing substantially equivalent work and have been eligible for other jobs for which he was qualified that were open only for current Smithsonian employees.

*Id.* at 5.

## A. *Pre-RIF Allegations: Continuing Violation*

In Paragraph No. 7 of the Complaint, plaintiff Graham asserts that the defendant discriminated against him because of the following pre-RIF incidents:

a. In ... [Graham's] position as head keeper [, *i.e.*, Animal Keeper Foreman], his supervisor, Miles Roberts, directed him not to supervise the white female keepers who were under his supervision.

b. In ... [Graham's] position as head keeper, he was continually omitted from the chain of command with the result [being] that his position of head keeper, although technically retained, was actually abolished.

c. In response to ... [Graham's] request to correct deviations from the chain of command, his supervisor demanded that he undergo a fitness for duty examination.

With respect to the RIF itself, Graham alleges that "[o]n December 12, 1980, his position as head keeper was abolished, and although he was as qualified as a white head keeper, he was not considered for the position of collection manager because of his age." *Id.* at ¶ 7d.

In Paragraph No. 8 of the complaint, plaintiff Olds sets out allegations concerning pre-RIF incidents, which parallel closely those of Graham in Paragraph Nos. 7a. and 7b., *supra*. In regard to the RIF itself, Olds alleges that "[h]e was forced to retire [after the RIF] by defendant failing [sic] to select him as a collection manager although he had seniority and all the formal qualifications needed for the position." *Id.*

The defendant argues that all of the above-mentioned pre-RIF allegations must be read out of the complaint, because "[b]oth Mr. Graham and Mr. Olds sought EEO Counseling and filed formal EEO complaints for the first time in connection with the abolishment of their jobs [by the RIF] in December, 1980." *Motion to Dismiss*, at 6. Although the defendant concedes that the plaintiffs may present proof of these pre-RIF incidents as relevant background evidence, *id.* at 8, the defendant maintains that these alleged occurrences

---

**4.** The exhaustion arguments raised by the defendant are the alleged bases for "partial" dismissal of this action.

may not be litigated as discrimination claims in this case. *Id.* at 7–8.

On the other hand, the plaintiffs assert that Title VII's requirement that a formal administrative complaint be filed within thirty calendar days of an agency's alleged discriminatory action, does not apply to this case, because "there has been a *continuing pattern of discriminatory practices.*" Opposition to Defendant's Motion to Dismiss ("*Opp.*"), at 2 (emphasis added). This assertion is consistent with the Complaint's conclusory allegation that "[t]he effect of the *policies and practices* complained of ... has been to deprive plaintiffs of equal employment opportunities and otherwise adversely affect their status as employees *because of their supervisors' discriminatory actions relating to their race, sex and age.*" *Complaint* ¶ 9 (emphasis added).

■ A precondition to suit under Title VII is that a plaintiff first seek relief through the agency that has allegedly fostered the discrimination. *Brown v. General Services Administration*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). "As a general rule, a Title VII claim may be premised only upon specific instances of misconduct of which the ... [EEOC] is apprised within the statutorily-prescribed time." *Shehadeh v. Chesapeake & Potomac Telephone Co.*, 595 F.2d 711, 724 (D.C.Cir.1978) (footnote omitted). "When, however, a *continuing discriminatory employment practice* is alleged, the administrative complaint may be timely filed notwithstanding that the conduct impugned is comprised in part of acts lying outside the charge-filing period." *Id.* (emphasis added) (footnote omitted). In this context, "it is the ongoing program of discrimination, rather than any of its particular manifestations, that is the subject of attack." *Id.* at 724–25.

■ In the present case, plaintiffs Graham and Olds filed timely EEO complaints in response to the December 12, 1980 RIF.

Both of their administrative complaints alleged race, sex, and age discrimination on the part of the Zoo's Office of Animal Management. In addition, the plaintiffs alleged only that their jobs were " 'abolished' to make room for young white people—*and effectively to eliminate all black supervisors.*" (Emphasis added.) Although it is evident that the plaintiffs were referring to the RIF in these complaints, it is not clear, given these bare-boned allegations, whether, by including the phrase "effectively to eliminate all black supervisors," the EEOC was put on notice of the continuing violation theory that plaintiffs' enunciate in their district court complaint. Graham and Olds assert vehemently, but without documentation,[5] that "[t]he [pre-RIF] incidents of discrimination in plaintiffs' [district court] complaint were definitely included in their EEO complaints." *Opp.*, at 3. This assertion is almost as bare-boned as the administrative complaints themselves were.

Nonetheless, in the context of a motion to dismiss and in consideration of the lack of an administrative record in this case, *see supra* note 5, the Court must construe the contentions of the plaintiffs with respect to the notice issue in the light most favorable to the plaintiffs. Accordingly, partial dismissal is not warranted because of the plaintiffs' alleged failure to articulate their continuing violation theory in their respective EEOC complaints.

A continuing violation analysis must go beyond this notice issue, however. A critical question is whether a present violation existed when the administrative complaints were filed—*i.e.*, a violation occurring within the thirty-day filing period. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Milton v. Weinberger*, 645 F.2d 1070, 1075 (D.C.Cir.1981). In the instant case, the plaintiffs filed their EEOC complaints on December 19, 1980—seven days after the RIF went into effect. They were, there-

---

**5.** The docket entries and official court jacket (including depositions and exhibits filed) reveal that only three pages of the entire administrative record (excerpts from a March 8, 1983 hearing) of the unresolved EEOC proceedings were ever submitted to the Court in this case.

fore, filed within Title VII's prescribed time frame. Thus, assuming Graham and Olds can "prove" that the RIF discriminated against them (a "present" violation), they have overcome this hurdle of a continuing violation claim.

■ In addition, the continuing violation allegations must "connect" the remote claims to those for which the pertinent administrative claims were timely filed. *See id.* at 1077. Absent such connecting allegations, such remote claims are now time-barred. *Id.* In this light, the defendant argues as follows:

> Plaintiffs allege that they were treated discriminatorily by their immediate supervisors prior to the abolishment of their jobs. There is, however, *no relationship between this alleged treatment and the decision by higher management officials [at the Smithsonian] to abolish the foreman position because plaintiffs' immediate supervisors had no responsibility for this policy decision.* Plaintiffs are thus attempting to make a "continuing violation" theory case by sheer volume of events, rather than by attacking a single, systematic discrimination policy....

*Motion to Dismiss,* at 9 (emphasis added). The defendant relies on *Milton,* 645 F.2d at 1076, which held that a plaintiff may not seek relief from "specific, perhaps unrelated" claims of discrimination that are time-barred under Title VII, by masking them in the guise of a continuing violation for purposes of circumventing the thirty-day limitations period.

This point is well taken but not wholly accepted by the Court. It is difficult to conceive of how the plaintiffs can demonstrate a nexus between the 1980 RIF, an agency action taken at the direction of "higher-ups" at the Smithsonian, and the discriminatory conduct of the plaintiffs' immediate supervisors, which allegedly occurred prior to the RIF. To date, the plaintiffs have proffered no evidence, by way of affidavits or exhibits, to indicate the possibility of such a nexus. Nevertheless, in the context of a motion to dismiss under Rule 12(b)(6), the Court must evaluate the allegations of the complaint in the light most favorable to the plaintiffs. Given the inclusion by Graham and Olds of the term "policies and practices" in Paragraph No. 9 of the Complaint, *supra,* the Court must conclude that the plaintiffs have suggested a "connection" and thereby sufficiently pled a continuing violation case, so that their pre-RIF allegations of discrimination survive the defendant's motion for partial dismissal. *Cf. Shehadeh,* 595 F.2d at 724 n. 66 (EEOC " 'jurisdiction vests when it receives a charge which merely alleges the current existence of an unlawful policy' ") (quoting EEOC Compl.Man. (CCH) ¶ 4102–03, §§ 208.1–208.2 (1976)). Accordingly, the defendant's motion is denied in this regard.

### B. *Post-RIF Allegations: Continuing Violation*

Paragraph No. 7e. of the district court complaint alleges the following post-RIF incidents:

> [Graham] applied for the position of head keeper at the National Zoological Park's research facility in Front Royal, Virginia, and although he had retention rights to the position, he was not notified that the position was available, having learned that such a position would become available from other sources, and he was not selected for the position.

Although plaintiff Olds makes no parallel allegations, Olds applied for the same position at the Front Royal facility and was also not selected. It is clear that the plaintiffs depict a theory of reprisal or retaliation on the part of the Zoo's officials, because the plaintiffs filed EEOC complaints in response to the RIF.

The defendant contests this theory, asserting that it is outside the scope of this action, "because it was not presented to an EEO Counselor in a timely manner for potential administrative resolution by the agency." *Motion to Dismiss,* at 11. In addition, the defendant contends, as he did in regard to the pre-RIF allegations, that "this reprisal claim is specious because

there is no nexus between the selection for ... [the Front Royal] position and the abolishment of plaintiffs' positions in Washington, D.C. [by the RIF] and the subsequent EEO complaint." (Emphasis added.) Finally, in plaintiff Olds' case, the defendant maintains that Olds "was not even eligible for the [Front Royal] position because he was no longer a current Smithsonian employee," when he applied for it. *Id.* Therefore, the defendant concludes, "all claims regarding the position in Front Royal are not properly before this Court and should be dismissed." *Id.* (citing Fed. R.Civ.P. 12(b)(6)).

In *Loe v. Heckler,* 768 F.2d 409, 420 (D.C.Cir.1985), Judge Ginsburg, writing for a unanimous panel, stated that "[a]n administrative charge specifying a pattern of ongoing discrimination will be interpreted as *incorporating instances of subsequent, essentially similar conduct.*" (Emphasis added.) Thus, the continuing violation analysis applicable to the plaintiffs' post-RIF allegations is the same as that conducted in regard to their pre-RIF allegations, *supra.* Again, the complaint must be construed in the light most favorable to the plaintiffs. Given the Court's treatment of the pre-RIF allegations in Part A of this opinion, *supra* (and because the parties have failed to submit the EEOC record in this case, *see supra* note 5), the Court, for now, must accept the plaintiffs' assertion that the failure of the defendant to select the plaintiffs "for a position in the National Zoo's Front Royal, Virginia facility in 1981 *was considered in the EEO complaint.*" *Opp.,* at 3. This is so, even though the plaintiffs have proffered very little evidence that the EEOC considered their post-RIF allegations.[6] Therefore, the defendant's motion for partial dismissal will not be granted on the ground that the plaintiffs failed to raise their post-RIF allegations in their respective EEOC complaints.

Likewise, with respect to the defendant's challenge that there was no causal connection between the 1980 RIF and the plaintiffs' nonselection for the Front Royal position in 1981, the Court must determine, within the context of the complaint, whether the plaintiffs can prove any set of facts that would entitle them to relief for their discrimination claims. It will be a difficult task to demonstrate a nexus between the abolishment of the head keeper positions by Smithsonian officials in Washington, D.C. and the plaintiffs' subsequent nonselection for similar positions in Front Royal, Virginia. However, in Paragraph No. 9 of the Complaint, as discussed in Part A of this opinion, *supra,* the plaintiffs allege specifically that "[t]he effect of the *policies and practices* complained of ... has been to deprive plaintiffs of equal employment opportunities...." (Emphasis added.) Therefore, in the context of a Rule 12(b)(6) motion, the Court concludes that the plaintiffs have sufficiently pled their post-RIF allegations to withstand the defendant's motion for partial dismissal as to this nexus issue.

In regard to the defendant's concern that plaintiff Olds was not qualified for the Front Royal position, the "Dial A Job" announcement, issued by the Smithsonian on March 6, 1981 (almost three months after the RIF), did restrict applicants for that job to "Current permanent Federal full-time Smithsonian employees." Olds had retired shortly after he filed his EEOC complaint and shortly before he applied for the Front Royal position, so that he was not a current employee at the time of his application. Although the defendant's assertion that Olds' nonselection was not based on a retaliatory motive is appealing, the Court will not grant partial dismissal as to Olds' post-RIF allegations.

A prima facie case of retaliation is drawn from the framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct.

---

**6.** *See* Olds' Deposition of November 13, 1985 at p. 18:

Q Did you file an EEO complaint regarding your nonselection for ... [the Front Royal] job?

A No, I didn't, because it was part of the original EEOC complaint.

1817, 36 L.Ed.2d 668 (1973). The plaintiff need only show the following: "1) that ... [he] engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two." *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C. Cir.1984). In the present case, Olds filed his administrative complaint in a timely fashion in response to the 1980 RIF, so that the first requirement is met. In addition, given the broad language of Paragraph No. 9 of the Complaint, that "[t]he effect of the policies and practices complained of has been to deprive ... [Olds] of equal employment opportunities and otherwise adversely affect ... [his] status as an employee," it is arguable that Olds has alleged a causal connection between the filing of his administrative complaint (protected activity) and his subsequent nonselection (adverse personnel action) for the Front Royal job.

It is more likely, however, in the context of his continuing violation theory, that Olds will assert that "but for" the pre-RIF discrimination and the RIF, he would have neither filed the EEOC complaint nor retired; so that he would have been a "current" Smithsonian employee (and therefore an eligible applicant) when he applied for the position in Virginia. Although under the *McDonnell Douglas/McKenna* test, *supra,* the plaintiff is required to show a causal connection between the protected activity—here, the filing of the administrative complaint, *not pre-RIF discrimination or the RIF*—and the adverse personnel action (here, Olds' nonselection), the Court shall deny the defendant's motion to dismiss without prejudice on this issue, and permit Olds' post-RIF discrimination allegations to stand at this juncture.[7]

## C. *Substantially Equivalent Positions*

With respect to the merits of the plaintiffs' claim that the 1980 RIF discriminated against them, the Court cannot rule in the affirmative on the defendant's motion to dismiss. Although the defendant argues that Graham and Olds are "not entitled to any relief as a matter of law ...," because "they were offered substantially equivalent positions with no loss of pay for two years," *Motion to Dismiss,* at 2, the defendant failed to move for summary judgment on this issue.[8] Assuming, *arguendo,* that he had so moved, a genuine issue of material fact exists as to whether the Animal Keeper Foreman position abolished by the RIF was substantially equivalent to the Animal Keeper Leader position offered to the plaintiffs because of the RIF. Accordingly, the Court cannot rule as a matter of law in this regard.

As described in their respective Civil Service Commission position descriptions, the Foreman job was clearly more supervisory in nature than the Leader job was. Although the former position did require that a Foreman be "[r]esponsible for the cleanliness of all Division spaces ...," it is chiefly described as follows: "This position [*i.e.,* the Foreman] is the Headkeeper, Division of ['Small Mammals and Primates' in the case of Graham and 'Large Carnivores' in the case of Olds], and has *responsibility for the supervision and coordination of the work of the Division, and for the technical and administrative aspects of planning, layout of work, directing and supervising personnel assigned to the Division.*" (Emphasis added.) In addition, the Foreman was required to confer with the Division Manager and/or general cura-

---

**7.** Plaintiff Graham has clearly enunciated a prima facie *McDonnell Douglas/McKenna* reprisal claim under Title VII: First, he filed his EEOC Complaint one week after the 1980 RIF (a statutorily protected activity); second, he alleged that he had retention rights under the RIF to the Front Royal position, but was neither notified of its availability nor selected when he applied for the job (adverse personnel actions); and third, he alleged, as Olds did, that the "effect of the policies and practices" of the defendant deprived him of employment opportunities (causal connection). *See Complaint* ¶¶ 7e. & 9. Thus, Graham is not precluded from trying his post-RIF allegations either.

**8.** *See Ford Motor Co. v. EEOC,* 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982) (Title VII claimant need not go into another line of work, accept a demotion, or take a demeaning position to mitigate damages).

tor on the establishment of methods and practices to govern the overall operations of the Division, "to issue instructions ... to the keepers," to prepare and maintain "inventory records on specimens in the Division," and "to inform the keepers of work assignments." This list is not exhaustive. Moreover, the most physically demanding requirements of the Foreman job appear to have been the operation of a government motor vehicle and 24 hour-a-day availability on the part of the "incumbent."

In contrast, although the Leader position called for the management and direction of the work of "lower-grade workers," a Leader had, *inter alia*, to clean animal enclosures, clean bird nests and perches, feed and water all animals, and clean "public areas." In addition, the position required the incumbent to make "preparations for the capture and crating, if necessary, for the movement of animals...." This list of duties is not exhaustive. Finally, the "Physical Requirements and Conditions" of the job included

> considerable walking, standing, heavy lifting up to 100 pounds, stooping, and other types of physical effect and dexterity in moving and distributing animals, animal feed, cage materials, equipment, and in opening and closing cage doors and gates. *Although safety measures are taken, there is always a potential hazard of injury in working with exotic and unpredictable animals.*[9]

(Emphasis added.) (Footnote added.) The differences on paper between the two job descriptions speak for themselves.

Nevertheless, although the defendant concedes that "on paper the Animal Keeper Foreman (Head Keeper) position included *some* supervisory responsibilities ..." the defendant argues that, "in fact, plaintiff Olds ... had not exercised any supervisory responsibilities since 1968, when a new po-

sition of Curator was added to the unit.... The Curator position included supervisory responsibility for the unit." *Motion to Dismiss*, at 4 (emphasis added).

In opposition, the plaintiffs state as follows:

> Admittedly, the duties performed by plaintiffs as head keepers had been diminished by their supervisors so that plaintiffs' positions became more and more like the ones offered to them [in the RIF notice] but their job descriptions had never changed, and remained [unchanged] until the head keeper job was abolished.... *Although their position description was never changed, the Zoo illegally had plaintiffs perform duties that were other than [those] in the position description prior to the abolition of their jobs.*

*Opp.*, at 2 (emphasis added). These contentions are in line with the allegation contained in Paragraphs Nos. 7b. and 8b. of the Complaint that, in their positions as head keepers, the plaintiffs were "continually omitted from the chain of command with the result being that ... [their] position[s] ... [as] head keeper[s], although technically retained, ... [were] actually abolished."

In short, the plaintiffs theory in this regard is twofold. First, given their respective job descriptions, the Foreman position was supposed to be supervisory, whereas the Leader position was intended to consist primarily of manual labor chores. Thus, by offering the plaintiffs the latter—substantially *unequivalent*—job, the RIF discriminated against Graham and Olds. In addition, and in conjunction with their continuing violation theory, *supra*, the plaintiffs maintain that their supervisors had illegally eliminated the plaintiffs' prescribed supervisory roles prior to the 1980 RIF. In short, as the plaintiffs see it, the

---

**9.** According to an Employee Relations Specialist with the Smithsonian's Office of Personnel Administration, plaintiff Graham, who accepted the Animal Keeper Leader position offered by the RIF, was injured on four separate occasions after the RIF. Affidavit of Michael J. Johnson, Jan. 7, 1986, ¶ 2. "The last of these injuries

which occurred on August 8, 1983, left Mr. Graham unable to work. He has been on leave without pay status (LWOP) since November 20, 1983." *Id.* "Mr. Graham continues to be on LWOP status collecting Workmen's Compensation...." *Id.* at ¶ 3.

defendant's argument that Graham and Olds were not acting as supervisors well before the 1980 RIF—even though their job descriptions articulated supervisory duties—actually cuts in favor of the plaintiffs.

As indicated above, however, neither the defendant nor the plaintiffs filed for summary judgment or submitted sufficient exhibits or affidavits on the issue of the comparability (or lack thereof) of the Foreman and Leader positions to enable the Court to rule as a matter of law in this regard. Accordingly, the defendant's Rule 12(b)(6) motion shall be denied with respect to the merits of the plaintiffs' discriminatory RIF contentions.[10]

## CONCLUSION

This case shall proceed to a bench trial. The plaintiffs are entitled to put on their continuing violation theory with respect to both pre- and post-RIF allegations of discrimination. However, they should seriously consider, given the inherent difficulty in proving such a theory, whether they wish to pursue it at trial. More importantly, the plaintiffs are entitled to the opportunity to show that the 1980 RIF, which abolished their Animal Keeper Foreman positions at the Zoo, was motivated by discrimination against them.

Accordingly, it is by the Court, this 9th day of June, 1986, hereby

ORDERED that the defendant's motion to dismiss (or for partial dismissal) is DENIED; and it is

FURTHER ORDERED that in regard to plaintiff Olds' post-RIF allegations of discrimination, the defendant's motion is denied without prejudice.

---

**10.** The defendant argues additionally in the motion to dismiss that, because Olds retired, and thereby failed to mitigate his damages by accepting the Animal Keeper Leader position, he is precluded from any accrual of back pay. Moreover, the defendant contends that because Graham never received a loss in pay due to the RIF, and cannot now perform any work (*see supra* note 9), the back pay and job assignment

relief he seeks are not available to him. Finally, the defendant asserts that, because the plaintiffs are not qualified for a "collections manager" position at the Zoo, the reinstatement relief they seek cannot be granted. Because these issues address only the remedial aspects of this case, dismissal on any of these grounds is not warranted; and resolution of these issues is appropriately reserved until trial.