**Carl PLEASANTS, Plaintiff,**

v.

**Joe ALLBAUGH, Director, Federal Emergency Management Agency, Defendant.**

**Civil Action No. 00–3094(JMF).**

United States District Court, District of Columbia.

Jan. 31, 2002.

---

Jerry Robert Goldstein, Goldstein, Handler & Levine, P.C., Bethesda, MD, for plaintiff.

Laurie J. Weinstein, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This matter was referred to me by Judge Kessler for all purposes. I herein resolve *Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment*[1] ("Def.Mot.") based on whether plaintiff's failure to consult with an EEOC counselor within 45 days of his superior's refusal to upgrade his position bars him from relief on that claim.

## BACKGROUND

Plaintiff is an African–American male who began working at the Federal Emergency Management Agency ("FEMA") in August 1992, when he was selected to fill the GS–13 position of Program Specialist in the Operation Services Branch, Program Services Division. In this position, plaintiff was responsible for managing FEMA's nationwide space needs, including acquisitions, utilizations, disposals, and maintenance. Plaintiff held this position until he retired on January 31, 1999.

Plaintiff claims to have originally shared the space management workload with four other employees. However, each of these co-workers eventually left the agency and was not replaced, due in part to the reorganization and downsizing of FEMA in accordance with then-Vice President Gore's National Performance Review. Thus, plaintiff alleges that he had no staff assistance during most of the time he was with FEMA.

Plaintiff was appointed in October 1995 to Acting Chief in the Operations Services Branch. This was a temporary position and plaintiff continued to perform his space management duties. Plaintiff claims that although another employee, Pauline Drury, had been upgraded to a GS–14 when she held the same Acting Branch Chief position, plaintiff remained a GS–13 and received no additional compensation.

In May, 1996, Reginald Trujillo ("Trujillo") became Director of the Program Services Division, and thus plaintiff's second-line supervisor. In an attempt to achieve an upgrade to a GS–14, plaintiff stepped down from the Acting Branch Chief position in March, 1997, at Trujillo's suggestion. Trujillo had allegedly informed plaintiff that an upgrade of his Program Specialist position by the personnel department would be more likely once plaintiff had stepped down from the Acting Branch Chief position. Plaintiff claims to have been deceived by Trujillo in this regard, stating that Trujillo never submitted the request for an upgrade to the personnel department.

Around this same time, plaintiff, at Trujillo's request, drafted a new position de-

---

**1.** In resolving defendant's motion to dismiss, I take the allegations of plaintiff's complaint as true and grant plaintiff the benefit of all reasonable inferences. *Gilvin v. Fire,* 259 F.3d 749, 756 (D.C.Cir.2001).

scription for the Branch Chief position, making it a GS–14 level position that would be a combination of plaintiff's Program Specialist position and the recently vacated Support Service Supervisor position. Eventually the new position was approved and plaintiff and Virginia Akers ("Akers"), a white woman, applied for the position. Although Akers was plaintiff's subordinate, a GS 12, she was selected over him.

Throughout his tenure at FEMA, plaintiff claims that he regularly received superior performance appraisals while serving as Program Specialist. *See Plaintiff's Opposition to Defendant's Motion to Dismiss* ("Pl.Opp.") at 4–5. Trujillo indicated in a memorandum on budget issues that plaintiff's position was an integral function of the Agency and that the plaintiff was performing the work of 10 people. *Id.* at 5–6.

Plaintiff claims that he made numerous requests to Trujillo to reclassify or upgrade his position to a GS–14, but was repeatedly rebuffed. The last of these requests is alleged to have been made in December 1998. In January 1999, plaintiff accepted the Agency's offer of an early-out retirement, which became effective on January 31, 1999. Plaintiff claims that a significant factor in his decision was FEMA's repeated refusals to upgrade his position.

Within seven months of plaintiff's retirement, Akers and Trujillo expanded the Program Specialist position to include wider technical and financial responsibilities, and upgraded it to a career ladder GS–13/14 level. This new position allegedly incorporated many of the changes plaintiff had been seeking during his employment with FEMA. Plaintiff learned of the new position and applied on July 27, 1999, but failed to make the best-qualified list as determined by a rating panel and therefore was never interviewed. Akers and Trujillo interviewed six applicants and eventually selected Kim Roque, an Asian American woman, for the position. Plaintiff learned of his non-selection via telephone on or about October 1, 1999, and contacted an EEOC counselor on October 28, 1999. Pl. Opp. at 7. Plaintiff then filed a formal complaint of discrimination with the EEOC on December 6, 1999.

## DISCUSSION

### Adverse Employment Action

Defendant contends that plaintiff should have consulted an EEOC counselor no later than 45 days after his retirement on January 31, 1999, in order to preserve for adjudication any claims of racial discrimination that occurred prior to his retirement. In the second part of the memorandum, however, the government argues that the events that occurred prior to plaintiff's retirement do not constitute adverse, employment actions and cannot be the premise for claims of relief in this court. There is a curious and illogical inconsistency in the government's position. In the first section of its memorandum, the government chastises the plaintiff for not exhausting his administrative remedies as to those aspects of his pre-retirement employment about which he now complains. In the second section, the government remonstrates that events that occurred during his pre-retirement employment that do not rise to the level of adverse employment actions. Thus, as the government would have it, a Title VII plaintiff must file an administrative claim as to every aspect of his employment, no matter how trivial, but can only press in court those claims that meet the criterion of an adverse employment action.

This interpretation of Title VII's requirements has nothing to recommend it. If accepted, Title VII counselors will be besieged with complaints about every con-

ceivable action lest complainants be deemed to have failed to exhaust them. More to the point, the purpose of any statute of limitations is to protect the defendant from stale claims, i.e., claims that are difficult to investigate and defend because of the passage of time. But if the government is right and nonadverse, trivial occurrences in the work place can never serve as a basis for a claim of relief in this court, the government already has all the protection it needs. Thus, forcing government employees to exhaust their administrative burdens as to what the government classifies as "nonadverse" employment actions generates paperwork, creates a greater burden for Title VII counselors (who, one supposes, have enough to do), and does not advance one iota the effectuation of the policy behind the statute of limitations.

More to the point, a careful review of the complaint, plaintiff's opposition to defendant's motion, and plaintiff's declaration does not indicate that he intends to premise a claim for relief upon anything other than (1) Trujillo's refusal to upgrade plaintiff's position to GS–14, and (2) plaintiff's not being selected for the position given to Kim Roque.[2] Indeed, it is hard to understand how, for example, a complaint of inadequate staff support or the mere publication of a vacancy announcement could, in itself, serve as the premise for a damage award. In any event, by waving the statute of limitations flag to bar claims that plaintiff does not and cannot assert, the government is knocking down straw men.

The true question presented is whether plaintiff may premise a claim for relief

upon Trujillo's refusals to upgrade his position to a GS–14, even though the last of such refusals occurred in December 1998, and plaintiff never contacted an EEOC counselor about it. That question is a practical one; resolution in plaintiff's favor would permit him to claim back pay from a date earlier than Roque's selection.

### Time–Filing Requirements

Under 29 C.F.R. § 1614.105(a)(1)(2001), an aggrieved person who believes that he has been discriminated against must initiate contact with an EEOC counselor within 45 days of the alleged discriminatory acts. This time-filing requirement has been interpreted as a prerequisite to initiation of a Title VII claim. *Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1091 (D.C.Cir.1985)(*citing Brown v. Gen. Services Admin.*, 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). As just noted, the purpose behind this rule is to protect defendants from having to defend against stale claims. *Delaware State College v. Ricks*, 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

Plaintiff concedes that he did not consult an EEOC counselor within 45 days of any event that antedates his retirement, but he invokes the "continuing violation" theory, one that allows a plaintiff to litigate claims that fall outside of the time-filing requirements if he proves either a "series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period." *Palmer v. Kelly*, 17 F.3d 1490, 1495 (D.C.Cir.1994)(*quoting Berger v. Iron*

---

**2.** Defendant identifies a third claim, the failure to hire additional staff to support plaintiff, but my reading of the complaint and plaintiff's opposition to defendant's motion to dismiss do not lead me to conclude that such a claim has been made. The facts surrounding plaintiff's being overworked are more in the

nature of background information and do not rise to the level of actionability in and of themselves. In any event, even if such a claim has been made, it does not pass the continuing violation test by the standards I discuss herein.

*Workers Reinforced Rodmen Local 201,* 843 F.2d 1395, 1422 (D.C.Cir.1988)); *McKenzie v. Sawyer,* 684 F.2d 62, 72 (D.C.Cir.1982); *Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C.Cir. 1982); *Milton v. Weinberger,* 645 F.2d 1070, 1075 (D.C.Cir.1981). Whether a violation is continuing must be addressed on a case-by-case review of the facts. *Albritton v. Kantor,* 944 F.Supp. 966, 970 (D.D.C. 1996).

One requirement of any continuing violation claim is that at least one of the counts is timely filed. *Id.* at 971. There is no dispute that plaintiff's contacting the EEOC on October 29, 1999, was within the 45-day period with regard to his claim for non-selection for the upgraded and expanded position.

### Series of Related Acts

■ To qualify under the "series of related acts" prong of the continuing violation doctrine, the otherwise time-barred allegations must *substantially* relate to the timely and exhausted violation. *Albritton v. Kantor,* 944 F.Supp. at 971; *Graham v. Adams,* 640 F.Supp. 535, 539 (D.D.C.1986).

■ In *Milton v. Weinberger,* 645 F.2d 1070, the court held that in order to be continuing, the discrimination must not be limited to isolated incidents, but must pervade a series or pattern of events that continue into the filing period. *Id.* at 1076-77. To determine whether acts are discrete and isolated or are substantially related, courts, including this one,[3] have found the following factors, adopted in *Berry v. Board of Supervisors of LSU,* 715 F.2d 971 (5th Cir.1983), to be controlling:

(1) Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? (2) With regard to the frequency of the acts, are the alleged acts recurring or more in the nature of an isolated decision? (3) Do the acts possess a degree of finality that would alert an employee of a need to assert his or her rights? *Id.* at 981.

In this case, plaintiff satisfies the first two criteria with respect to his post-retirement nonselection and his pre-retirement failure to upgrade claims. First, both of the claims involve discrimination based on race. More significantly, the non-selection and the failure to upgrade had the same practical effect, preventing plaintiff from remuneration at a GS–14 level for the scope and scale of the work he was performing. Plaintiff claims that he had been requesting an upgrade for several years, to no avail. Plaintiff alleges that the expanded position advertised in July 1999 was quite similar, if not identical, to the one plaintiff had been seeking all along, reflecting the recurring nature of the alleged violation. His application for the upgraded position after he had retired can be seen as yet another attempt at a promotion and thus defendant's decision not to hire him as part of a persistent refusal to pay plaintiff what he was worth before and after his retirement. To describe the failure to promote as discrete and isolated from his subsequent non-selection is to ignore the context within which these events occurred.

Defendant points out that Trujillo, plaintiff's supervisor, was not a member of the three-person panel that ranked the applicants for the July 1999 position and therefore cannot be implicated in his non-selection. Plaintiff responds that Trujillo appointed two of the three members of the ranking panel. Although in one instance, the court held that an argument for relatedness is strengthened "if the adverse actions stem from the same source," *Calien-*

---

**3.** *See e.g., Albritton v. Kantor,* 944 F.Supp. at 971.

*do v. Bentsen,* 881 F.Supp. 44, 48 (D.D.C. 1995), Trujillo's actual involvement in plaintiff's nonselection is not a prerequisite to allowing the earlier failure to promote claim. That there may have been different personnel supervisors involved in the two claims does not, in itself, sever any connection between them. *See Sharma v. Washington Metro. Area Transit Auth.,* No. 94–305, slip op. at 8 (D.D.C. October 10, 2000).

■ What makes this case perhaps unique among continuing violation cases is that the claims that fall outside the filing period predate plaintiff's voluntarily retirement. Although in some cases, a plaintiff's retirement might constitute a watershed event distinguishing old claims from new ones, that does not appear to be the case here. Plaintiff's retirement was effective as of January 31, 1999, and plaintiff claims that defendant appears to have wasted little time upgrading his position. I find that the nine months between plaintiff's retirement and his non-selection is a short enough time to recognize a nexus between the two acts of alleged discrimination. *See Albritton v. Kantor,* 944 F.Supp. at 972 (holding that promotion denials occurring at ten- to fifteen-month intervals indicates a recurring pattern). Given that the main purpose of the time–filing requirements is to preclude stale claims that are "long past," *Delaware State College v. Ricks,* 449 U.S. at 256–257, 101 S.Ct. 498, it appears rather arbitrary to conclude that any related claim was rendered immediately stale by virtue of plaintiff's retiring.

*Finality*

■ Once a Title VII plaintiff has reason to believe that an adverse employment action was discriminatory, he is obliged to see an EEOC counselor within 45 days. The "continuing violation" theory does not eliminate this basic obligation:

For statute of limitations purposes, a continuing violation is "one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period," *Dasgupta,* 121 F.3d at 1139, typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality. *Taylor v. F.D.I.C.,* 132 F.3d 753, 765 (D.C.Cir.1997); *See also Kilpatrick v. Riley,* 98 F.Supp.2d 9 (D.D.C.2000).

In this case, the finality factor cuts against plaintiff if he ultimately admits that he had reason to believe at the time that Trujillo's refusals to upgrade his position were discriminatory. If he so admits, then he will be hard pressed to argue that the motivation for Trujillo's action was unclear. He has made no such admission yet, however, and on the present record, the substantiality of the connection between Trujillo's acts prior to plaintiff's retirement and the agency's post-retirement selection of Roque outweighs this factor and requires the denial of the government's motion.

*Discriminatory System*

■ In addition to showing a series of related acts, a party may establish a continuing violation by demonstrating the maintenance of a discriminatory system or policy that was in place both before and after the limitations period. *Palmer v. Kelly,* 17 F.3d at 1495. Whether a policy of discrimination exists is a question of fact, requiring the charging party to point to specific acts from which the underlying policy might reasonably be inferred.

Plaintiff claims that there is evidence of system-wide discrimination against blacks. Specifically, plaintiff cites the non-promotion of blacks, the requirement that

blacks perform duties above their grade, and the refusal to upgrade positions held by blacks until after they are vacated. In support of this contention, plaintiff offers six examples of black employees retiring from their positions in the Program Services Division, only to have them filled by white persons. Together, these acts are said to constitute a pattern of discriminatory practices against blacks.

In *Graham*, the court found that plaintiffs' unsupported allegations that the defendants' actions constituted policies and practices of discrimination were sufficient to preserve a policy claim against a 12(b)(6) motion. *Id.* at 539. The court noted that "given the inclusion by [plaintiffs] of the terms 'policies and practices' in their complaint, the Court must conclude that the plaintiffs have suggested a 'connection' and thereby sufficiently pled a continuing violation case." *Id.* at 539.

■ Based on these facts, plaintiff has adequately alleged, in the context of a motion to dismiss, that defendant's actions constitute a discriminatory policy with respect to the failure to promote or upgrade the positions of black employees. Plaintiff's claim of the existence of a discriminatory policy, however, suffers from the same potential defect as his claim of a series of "related acts." If he admits that he was aware of a pattern of not promoting blacks prior to retirement and when Trujillo refused to upgrade his position, he faces authority for the proposition that his knowledge required him to consult with an EEOC counselor when Trujillo refused to upgrade him. *See e.g., Kilpatrick v. Riley*, 98 F.Supp.2d 9, 17 (D.D.C.2000); *Villines v. United Bhd. of Carpenters and Joiners of America, AFL–CIO*, 999 F.Supp. 97, 102 (D.D.C.1998). The question is not, however, free from doubt. *Compare Taylor v. F.D.I.C.*, 132 F.3d 753, 765 (D.C.Cir.1997), *with Anderson v. Zubieta*, 180 F.3d 329, 336 n. 11 (D.C.Cir.1999). There is certain-

ly no reason to resolve the issue on this record; it should await the conclusion of discovery and the filing of a dispositive motion:

> Whether plaintiff will ultimately be able to prove that the alleged discriminatory actions are connected to one another and constitute an 'ongoing program of discrimination' is an entirely different question and not one which the Court must address in the context of a motion to dismiss. If, after discovery, the Defendant believes that there is no evidence to support Plaintiff's continuing violation theory, Defendant can file a partial motion for summary judgment with respect to the remote claims.

*Caliendo v. Bentsen*, 881 F.Supp. at 48. *See also Shehadeh v. Chesapeake and Potomac Telephone Company*, 595 F.2d 711 (D.C.Cir.1978)(*citing Egelston v. State Univ. Coll. of Geneseo*, 535 F.2d 752, 755 (2nd Cir.1976)).

### Waiver

■ In order to revive an untimely allegation by claiming a continuing violation, a "plaintiff must have properly alleged the continuing violation theory in both the administrative complaint as well as the formal complaint" before the court. *Caliendo v. Bentsen*, 881 F.Supp. at 47. Therefore, according to defendant, plaintiff waived his continuing violation claim, as he failed to include the theory in his administrative complaint. However, "administrative complaints should be read liberally" and should not be held to the same standard as judicial pleadings. *Albritton v. Kantor*, 944 F.Supp. at 971; *Caliendo v. Bentsen*, 881 F.Supp. at 47. Moreover, it is sufficient that the continuing violation theory be evidenced in the EEOC charge, and it need not be specifically alleged. *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 1990). Essentially, the EEOC must be put on notice of the continuing violation theory that the plaintiff enunciates in his district

court complaint. *Graham v. Adams,* 640 F.Supp. at 538.

■ In the present case, plaintiff adequately asserted a continuing violation in his EEOC complaint. In particular, plaintiff alleged that he was the only person working within his department. Plaintiff also mentions his previous attempts to achieve an upgrade to GS–14, stating, "in previous conversations with Mr. Trujillo, he informed me that the position would not be elevated to the GS–14 level. Within seven months of my leaving the agency, the position was advertised at the higher level ..." Def. Mot., Exhibit 3 (Plaintiff's Complaint of Discrimination to EEOC at 2). Even more telling is the fact that plaintiff sought back pay from November 1995 to June 2001. Unless he was stating a claim for failure to upgrade during this period, he would never have requested such corrective action. Furthermore, the EEOC counselor addressed the failure to upgrade issue in his report. Def. Mot., Exhibit 1 (EEOC Counselor's Report at 3). In light of these considerations, it is fair to conclude that the continuing violation claim was evidenced in the EEOC charge. Accordingly, plaintiff did not waive his right to assert the theory in his district court complaint.

### ORDER

In accordance with the attached opinion, I conclude that the plaintiff has properly pled a continuing violation with respect to his failure to upgrade claim. A subsequent ruling on plaintiff's *Motion to Compel* is forthcoming. It is therefore, hereby,

**ORDERED** that *Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment* [# 5] is **DENIED.**

**SO ORDERED.**