**Francis T. SCOTT, Jr., Plaintiff,**

v.

**W. Graham CLAYTOR, Defendant.**

**Civ. A. No. 77–1334.**

United States District Court, District of Columbia.

June 17, 1978.

Roma J. Stewart, Washington, D. C., for plaintiff.

Karen I. Ward, Asst U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

Plaintiff, a black male, has brought this action pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e–16(c) (Supp. V 1975). Presently before the Court is defendant's motion to dismiss the complaint in part and plaintiff's motion to have the entire case remanded to the agency with directions to process plaintiff's complaint administratively.

### I. *Background.*

Plaintiff has been employed by the United States Naval Academy since February, 1968, when he was hired as a GS–7 computer operator. Just fourteen months later, in April, 1969, he was promoted two grades to GS–9 computer programmer. Thereafter, he received regular within-grade step increases through April, 1974.

In September, 1972, plaintiff applied for a GS–12 computer specialist vacancy, but he was not selected. In August, 1973, he applied for a GS–11 supervisory computer analyst vacancy, but again he was not selected. Shortly thereafter plaintiff filed an administrative complaint of discrimination. That complaint was heard at various agency levels up through the Navy Employee Appeals Review Board (NEARB). Each level concluded that no discrimination had occurred, and in July, 1974, the NEARB notified plaintiff of his additional appeal rights and the time within which any further appeal had to be filed. Plaintiff declined to exercise those rights, however.

In April, 1975, plaintiff was denied a within-grade step increase because, according to his supervisor, his performance was below "an acceptable level of competence." The Secretary of the Navy denied plaintiff's appeal of that decision, so he then appealed to the Civil Service Commission's (CSC) Federal Employee Appeals Authority (FEAA), which also denied it in October, 1976. The Civil Service regulations require the head of the agency to review denials of step increases within 52 weeks of the denial.[1] After such a review, plaintiff again was told in May, 1976, that his work was unacceptable, and the step increase continued to be withheld. This denial is the subject of a separate discrimination complaint that is still before the agency.

During this period when his step increase was being denied, plaintiff nevertheless continued his efforts to get promoted. In October, 1975, he applied for another GS–11 vacancy, this time a computer programmer position. Someone else was selected, however. In July 1976, he applied for either of two computer systems analyst vacancies, also at a GS–11 level. Again, he was not selected.

On March 30, 1977, plaintiff was informed for the third time that his performance was below par and that his step increase was still being withheld. On June 2, 1977, plaintiff filed an administrative complaint of racial discrimination, alleging:

1. failure to be promoted to a GS–11 since 1969,

2. failure to be promoted to a GS–12 since 1971,

---

1. 5 C.F.R. § 531.407(g) (1977).

3. failure to receive within-grade increases since 1975,[2]

4. lack of counseling,

5. charges of inadequate training as a pretext for denying within-grade pay increases,

6. unfavorable job assignments,

7. retaliation for having filed previous EEO complaints (e. g., discriminatory leave and signout roster requirements not applied to whites),

8. performance rating warning sent after the end of a rating period (implying the application of discriminatory standards), and

9. merit promotion rating changed from "highly qualified" to "qualified."

The Naval Academy's Deputy Equal Employment Opportunity (EEO) Officer "accepted" the complaint on June 9, 1977. After further review, however, the EEO officer determined that four of the allegations (1, 2, 3, and 9) should have been rejected. Accordingly, on June 30, 1977, plaintiff was informed that those four were being rejected, but that the remaining allegations would be processed.

Within 30 days of this notice of rejection, plaintiff filed his complaint with this Court. This complaint encompasses only those allegations of his administrative complaint that the agency rejected. Defendant is still investigating the other allegations.[3] Furthermore, plaintiff now concedes that the defendant properly rejected his ninth allegation as having been the subject of a prior EEO complaint,[4] leaving only allegations 1, 2, and 3 for the Court's consideration.

2. The complaint stated "since 1974," but the first denial of plaintiff's within-grade step increase occurred in 1975. Therefore, for clarity the 1975 date will be used throughout.

3. Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss at 2.

4. *Id.* at 4.

5. 5 C.F.R. § 713.214 (1977).

6. *Id.* § 713.215.

7. *Medina v. Reinhardt*, C.A. No. 77–360, at 6–8 (D.D.C. Jan. 27, 1978) (declining to find waiver

## II. *Merits.*

▮ Defendant's motion to dismiss is predicated upon plaintiff's apparent failure to present the allegations in his complaint to the agency in a timely fashion. As a threshold matter, plaintiff contends that if this defense is valid, defendant waived it when he sent plaintiff the June 9, 1977 notice that his administrative complaint had been "accepted."

The regulations require that a discrimination complaint be submitted to the agency within 30 days of the alleged discriminatory act.[5] Acceptance of the complaint by the agency essentially constitutes a formal acknowledgement that it has been received. The regulations also permit the agency to reject an untimely complaint.[6]

Plaintiff relies on a third provision in the regulations stating:

The agency shall extend the time limits in this section: (i) when the complainant shows that he was not notified of the time limits and was not otherwise aware of them, or that he was prevented by circumstances beyond his control from submitting the matter within the time limits; or (ii) for other reasons considered sufficient by the agency.

5 C.F.R. § 713.214(a)(4) (1977). This provision, however, clearly contemplates a deliberate decision by the agency to grant a waiver and not an inadvertent one as would have occurred here. The Court therefore rejects the waiver argument, a decision consistent with previous decisions in this district addressing comparable circumstances.[7]

because it would deter agencies from voluntarily attempting to find and correct discriminatory practices that are not timely complained of); *Stockton v. Harris*, 434 F.Supp. 276, 280 (D.D.C.1977) (describing waiver argument as "merely playing with words" for "the regulations say nothing about any kind of estoppel from rejecting the complaint once it has been accepted"). *But see Ward v. Califano*, Wash.D.L.Rep. 89, 93 (D.D.C. Jan. 16, 1978); *Scott v. Weinberger*, 416 F.Supp. 221, 12 E.P.D. ¶ 11,026, at 4793–94 (D.D.C.1976), *appeal dismissed*, No. 77–1101 (D.C.Cir. Feb. 18, 1977). These latter two cases are distinguishable from the case at bar and the other two. In them not only had the

Plaintiff further tries to defeat defendant's motion to dismiss by arguing that his claims are in fact timely because they allege continuing discrimination. When a pattern of continuing discrimination is properly alleged, the normal time limits for filing a complaint are suspended.[8] The rationale underlying this approach is that a remedy should be provided "for past actions which operate to discriminate against the complainant at the present time."[9] This principle cannot be carried too far, however, for to do so would undermine the purpose of imposing these time limitations in the first place.[10]

The Supreme Court recently addressed the continuing discrimination issue in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). The Court there held that a present employment practice giving continuing effect to a past discriminatory act but which is not itself discriminatory does not constitute a continuing violation. There must be a present violation as well. *Id.* at 558, 97 S.Ct. 1885. The essential ingredient is the interrelatedness of the past and present acts and not simply any similarity between them.[11] The question thus becomes whether this relationship exists between the pertinent acts involved in each of plaintiff's three allegations of discrimination.

The first allegation concerns his failure to be promoted to GS–11 since 1969. The Court notes, however, that plaintiff filed an earlier complaint covering this allegation at least up to the period ending around August, 1973. The administrative decision on that complaint, issued in July, 1974, was that no discrimination had occurred, and plaintiff did not appeal that. Thus, plaintiff concedes, as he must, that the beginning point for any present claim of continuing discrimination on the denial of promotion to GS–11 must be sometime after July, 1974.[12]

Because plaintiff was not in a career-ladder program pursuant to which he could have been promoted by defendant noncompetitively at any time, any discrimination he encountered must have been associated with a distinct competitive selection process

complaint been "accepted," but an investigation of the allegations had been completed and discrimination was found. Only at that point did those agencies reject the complaint as untimely instead of remedying the discrimination. Clearly the equities justified finding a waiver in those circumstances.

**8.** *E. g., Rich v. Martin Marietta Corp.*, 522 F.2d 333, 348 (10th Cir. 1975); *Macklin v. Spector Freight Systems*, 156 U.S.App.D.C. 69, 77, 478 F.2d 979, 987 (1973).

**9.** *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1234 (8th Cir. 1975) (en banc).

**10.** *Id.* at 1233; *accord, Corbin v. Pan Am. World Airways, Inc.*, 432 F.Supp. 939, 944 (N.D.Cal.1977); *Tarvesian v. Carr Div. of TRW, Inc.*, 407 F.Supp. 336, 340 (D.Mass.1976). *See also Moore v. Sunbeam Corp.*, 459 F.2d 811, 820–21 (7th Cir. 1972) (as part of compromise to ensure passage of Civil Rights Act of 1964, sponsors consented to short limitations period for private claims as prerequisite to permitting claim to be filed in federal court).

The law of continuing discrimination has been described as

both complicated and confusing, in part because there are a number of different theories under which the courts have found such violations to exist, in part because the discussion in many of the cases is less than clear, and in part because some of the fact situations involved in the cases, and also some of the concepts involved, pose very difficult linedrawing problems.

B. Schlei & P. Grossman, *Employment Discrimination Law* 884 (1976).

**11.** *See Tarvesian v. Carr Div. of TRW, Inc.*, 407 F.Supp. 336, 339–40 (D.Mass.1976) (need "analogous theme" between the alleged discriminatory acts). In *United Air Lines, Inc. v. Evans, supra*, the Supreme Court suggested the necessity of this interrelatedness criteria by indicating that plaintiff therein would have presented a continuing violation had she alleged that the present employment practice

treats former employees who were discharged for a discriminatory reason . . . differently from former employees who resigned or were discharged for a nondiscriminatory reason.

431 U.S. at 558, 97 S.Ct. at 1889.

**12.** *See* Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss at 2.

for an announced vacancy.[13] Between July, 1974, and May, 1977, when he filed his administrative complaint, three vacancies for GS–11 positions were announced and filled, the last of which occurred around August, 1976. Even assuming these three denials of promotion to GS–11 could be considered part of a continuing pattern, the administrative complaint giving rise to this case was not filed until nearly a year after the last one. In order for the Court to overlook the untimeliness of the complaint with respect to some of the acts constituting the allegedly continuing discrimination, the complaint must be timely with respect to at least one of them.[14] Here it is not.

Moreover, there is no real relationship between these denials of promotion to GS–11 that suggests they indeed are part of a continuing pattern of discrimination. At least two different positions involving different qualifications and with different selecting officials were involved.[15] Thus, they are more accurately described by the following language from the Supreme Court's decision in *Evans, supra:*

> But [employer] was entitled to treat that past act as lawful after respondent failed to file a [timely] charge of discrimination . . . . A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

431 U.S. at 558, 97 S.Ct. at 1889; *see Loo v. Gerarge,* 374 F.Supp. 1338, 1340 (D.Haw. 1974). The lack of timely charges with respect to these incidents means the claim must be dismissed.

Plaintiff's next claim is the failure to promote him to GS–12 since 1971. Again he contends that this is a continuing violation. It is unclear, however, why plaintiff chooses 1971 as the beginning point. As noted with respect to his GS–11 nonpromotion claim, plaintiff was not in a career-ladder program permitting him to be promoted noncompetitively at any time by the defendant, and it appears that the only time he applied for competitive selection to a GS–12 vacancy was in September, 1972. This is a classic example of an isolated act that must be timely complained of or else become "an unfortunate event in history which has no present legal consequences."[16] Because no timely charge was filed, this claim too must now be dismissed.

Plaintiff's final claim before the Court concerns the denial of his within-grade step increase. When the three denials are viewed in isolation, only the second one had a timely discrimination complaint filed on it. With respect to the first denial, plaintiff appealed under other provisions of the personnel regulations specifically addressing the denial of step increases. After that appeal was resolved against him, he did not attempt to challenge it on discrimination grounds. As to the final denial, this complaint was filed slightly more than thirty days after it, and therefore the charge was not timely made.

---

**13.** *See* Affidavit of Mary P. K. Jones, Staffing Assistant, Civilian Personnel Division, United States Naval Academy.

**14.** *E. g., Moore v. Sunbeam Corp.,* 459 F.2d 811, 828 (7th Cir. 1972) (failure to promote may be continuing offense, but at least one of the incidents must be subject of timely complaint). *Compare* B. Schlei & P. Grossman, *supra* note 10, at 898–901 (for continuing course of conduct involving series of independent acts, at least one of acts must be timely complained of) *with id.* at 901–06 (where challenge is to an employment system harming an entire class, courts more receptive to finding continuing violation and overlooking timeliness requirement).

**15.** Affidavit of Mary P. K. Jones, *supra* note 12. *Compare Corbin v. Pan Am. World Airways, Inc.,* 432 F.Supp. 939 (N.D.Cal.1977) (finding continuing discrimination properly alleged where plaintiff claimed he had been demoted, and others promoted into that position when it came open again on four different occasions).

**16.** Even if this one instance of nonpromotion to GS–12 were to be considered along with the instances of nonpromotion to GS–11, the Court would not find a continuing violation for the same reasons that it concluded there was none in considering only the GS-11 nonpromotions together. *See* page 26 *supra.*

Once more plaintiff tries to remove the timeliness obstacle by arguing that the acts are not isolated incidents but rather constitute a pattern of continuing discrimination. There is substantially more merit to this argument here than there was with respect to the promotion claims. Here a timely complaint was filed with respect to one of the separate acts, the second denial.[17] Because this Court has jurisdiction to consider it, the Court may also consider the subsequent third denial even though no timely complaint was made of it.[18] Furthermore, all three denials may be interrelated: each involved the same step increase and apparently the same supervisor. Thus, if discrimination was involved in one of the denials, there is a possibility that it may have been involved in the others.

There being a timely complaint as to one and an apparent relationship among the three, the Court concludes that a continuing claim of discrimination is presented as to the denial of a step-increase since 1975. As earlier noted, defendant concedes jurisdiction over the second denial. In view of the above, the Court will deny his motion to dismiss with respect to the first and third.

Also before the Court is plaintiff's motion to remand the entire case back to the agency. Insofar as the Court grants defendant's motion to dismiss, the motion to remand will be denied. Defendant, however, has agreed to process any claim that the Court declines to dismiss.[19] Because it has so declined with respect to the denials of a step-increase, that claim will be remanded to the agency. Plaintiff will still have recourse to the courts after final agency action on the remand. Accordingly, there is no need to retain jurisdiction pending resolution of the remanded portion.

**17.** That claim is still pending before the agency. Although it was subject to dismissal at the time this case was filed on the ground that the administrative remedy had not been exhausted, more than 180 days have now passed without a final agency decision permitting this Court to exercise jurisdiction over it. 42 U.S.C. § 2000e–16(c) (Supp. V 1975). Defendant does not challenge the Court's jurisdiction with respect to this denial.

**18.** *See* B. Schlei and P. Grossman, *supra* note 10, at 996 & n. 96 (citing several cases "holding that subsequently occurring incidents need not be specifically charged in order to be challenged in court").

**19.** Memorandum of Points and Authorities in Support of Opposition to Plaintiff's Motion to Remand and in Further Support of Defendant's Motion to Dismiss at 1.