Clarence ALBRITTON, Plaintiff,

v.

Michael KANTOR, Secretary, Department of Commerce, Defendant.

Civil Action No. 95–0617 RMU.

United States District Court,
District of Columbia.

Aug. 15, 1996.

T. Clarence Harper, Washington, DC, for Plaintiff.

Wyneva Johnson, Assistant United States Attorney, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

URBINA, District Judge.

### Denying Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment

This matter comes before the court upon the defendant's motion to dismiss, or in the alternative, for summary judgment.[1] Plain-

---

**1.** Pursuant to Fed.R.Civ.P. 25(d)(1), Michael Kantor is substituted for Ronald H. Brown, as the named defendant in this action.

tiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended. He alleges that the defendant denied a promotion on account of his race. The three issues before the court are whether: (1) three of the plaintiff's claims of discrimination for which he did not file timely administrative charges are properly before the court; (2) the defendant articulated a legitimate nondiscriminatory reason for not promoting the plaintiff in August 1994; and (3) the plaintiff's suit has been rendered moot as a result of his retirement.

After consideration of the parties' submissions, the court concludes that the plaintiff has properly alleged a continuing violation so as to vest this court with jurisdiction over his untimely filed claims; that a reasonable juror could conclude that the defendant's proffered reason for not promoting the plaintiff in August 1994 was pretextual; and, lastly, that the plaintiff's suit is not moot because he is entitled to meaningful relief.

### I. Factual Background

Clarence Albritton (Mr. Albritton) brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended. He alleges that the Patent Examiner Evaluation Board (PEEB) of the U.S. Patent and Trademark Office (USPTO) discriminated against him by denying him a promotion due to his race.

Mr. Albritton is an African–American man who was employed with the USPTO for 29 years. He served as a Primacy Patent Examiner, GS–14, prior to his retirement on September 3, 1994. Mr. Albritton alleges that on four separate occasions he submitted an application for promotion to the level of Senior Examiner Status, GS–15 level. He asserts that on each occasion, the PEEB would note additional deficiencies in his application that required actions on his part that had never been required of white applicants who had applied for the same position.

In October 1991, Mr. Albritton's Group Director, Donald Kelly (Mr. Kelly), submitted Mr. Albritton's application for Senior Examiner to the PEEB.[2] On December 6, 1991, the PEEB notified Mr. Kelly that it was deferring its decision on his request to promote Mr. Albritton to Senior Examiner. In deferring its decision, the PEEB discounted Mr. Albritton's Ranking Official Statement submitted by Mr. Stanley Urynowicz, a USPTO official. The PEEB concluded that the Ranking Official Statement was stale because Mr. Urynowicz had not reviewed Mr. Albritton's work since 1985. Consequently, the PEEB requested the submission of a new Ranking Official Statement which reflected familiarity with Mr. Albritton's recent work.

On January 27, 1992, Mr. Albritton submitted a statement from a second Ranking Official, Thomas E. Lynch (Mr. Lynch). On August 6, 1992, the PEEB denied Mr. Albritton's request for a promotion. The PEEB found that the new Ranking Official Statement submitted by Mr. Lynch was not persuasive and did not demonstrate that Mr. Albritton's work exhibited the ability that a Senior Examiner needed to possess.

Although the PEEB denied Mr. Albritton's renewed request for a promotion, it offered an alternative method of review of Mr. Albritton's application, if he were to apply a third time. Rather than requiring the submission of another Ranking Official Statement, the PEEB offered to randomly review a number of the patent applications that Mr. Albritton had worked on during 1992.[3]

On September 1, 1992, Mr. Kelly and Mr. Albritton agreed to this alternative method of review and submitted a list of all the patent applications that Mr. Albritton had worked on in the preceding twelve months. The PEEB randomly selected and reviewed twelve of the applications. Based upon their

---

**2.** During the application process, Mr. Albritton submitted statements of support from his Group Director and his Supervisor, Bruce Reynolds (Mr. Reynolds). He also submitted statements from a "Ranking Official," other examiners, and individuals outside the USPTO. A "Ranking Official" is an official occupying a permanent, full-time supergrade professional-technical position reporting to a Commissioner level. These posi-

tions include the Director of Research and Development Division and the senior members of the Office of the Solicitor.

**3.** The PEEB did not require the plaintiff to use this alternative method. He could have submitted a third Ranking Official Statement instead of availing himself of this alternative method.

review of Mr. Albritton's work on these applications, the PEEB concluded that his work did not meet the high quality standards required of a Senior Examiner. Consequently, on May 6, 1993, the PEEB denied Mr. Albritton's application.

On May 26, 1994, Mr. Kelly submitted a fourth application for promotion to the PEEB on behalf of Mr. Albritton. At the time of the PEEB's review in July 1994, Mr. Kelly was no longer the Group Director; Mr. Joseph Rolla (Mr. Rolla) had replaced him. Mr. Rolla therefore submitted to the PEEB a review of Mr. Albritton's most current work. In this review, Mr. Rolla found several errors in Mr. Albritton's work. On August 3, 1994, the PEEB denied Mr. Albritton's fourth application for promotion. After receiving this denial, Mr. Albritton did not submit another application for promotion. He retired on September 3, 1994.

Prior to his retirement, Mr. Albritton contacted an Equal Employment Opportunity (EEO) counselor on September 1, 1994. On October 14, 1994, he filed a formal discrimination complaint with the Office of Civil Rights of the Department of Commerce (the Agency). In his complaint, Mr. Albritton characterized the denial of his four applications for promotion as a single and continuous act of discrimination against him. The Agency reviewed Mr. Albritton's formal complaint and concluded that he did not meet the criteria for establishing a continuous violation. Rather, the Agency found that Mr. Albritton raised four separate and distinct incidents of alleged discrimination occurring on December 6, 1991, August 2, 1992, May 6, 1993, and August 3, 1994. The Agency dismissed the first three allegations as being untimely since Mr. Albritton had not contacted an EEO counselor until September 1, 1994. The fourth allegation dated August 3, 1994 was found to be timely. The Agency, however, dismissed the fourth allegation because Mr. Albritton's retirement had, in its opinion, rendered it moot.

Mr. Albritton was notified by the Agency of his right to appeal the decision to the Equal Employment Opportunity Commission (EEOC) or to file a civil lawsuit in district court. On March 30, 1995, the plaintiff filed the present action. The plaintiff seeks a: (1) declaratory judgment that the acts of the USPTO were violative of the laws of the United States; (2) judgment enjoining the defendant from continuing to discriminate against him; and, (3) judgment awarding him the promotion to the GS–15 Senior Examiner level, back pay, compensatory damages, and attorney fees.

Presently before the court is the defendant's motion to dismiss, or in the alternative, for summary judgment.

## II. Analysis

### A. Legal Standard

The parties have presented matters outside the pleadings. The court will thus treat the defendant's motion to dismiss for failure to state a claim upon which relief can be granted as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

Fed.R.Civ.P. 56(c) provides that, "summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates summary judgment if a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there is no genuine issue of material fact since there is a failure of proof concerning an essential element of the non-moving party's case that renders all other facts immaterial. *Id.* at 322–323, 106 S.Ct. at 2552–53. The moving party meets its burden if it illustrates that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2553–54. The party opposing a motion for summary judgment may not rely on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. The court must accept the evidence of the nonmovant as true, and all justifiable inferences are to be drawn in his favor. *Id.* Moreover, because discriminatory intent and proof of disparate treatment are difficult to establish, courts must view summary judgment with special caution and therefore must be particularly careful to view all of the evidence in the light most favorable to the plaintiff. *Ross v. Runyon,* 859 F.Supp. 15, 21–22 (D.D.C.1994). If a reasonable fact finder could infer discrimination based on the evidence submitted, then summary judgment is inappropriate. *Hayes v. Shalala,* 902 F.Supp. 259, 264 (D.D.C.1995).

### B. Time Filing Requirements

■ The defendant argues that Mr. Albritton's allegations with respect to the USPTO's failure to promote him in December 1991, August 1992, and May 1993 should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for failure to exhaust administrative remedies.[4] Prior to filing a discrimination suit in a federal court, a Title VII plaintiff must have sought administrative relief from the EEOC. *Webb v. District of Columbia,* 864 F.Supp. 175, 182 (D.D.C.1994). Relief under Title VII depends upon the filing of a timely administrative charge. *United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Brown v. GSA,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402 (1976). Untimely allegations are time-barred. *DuVall v. Postmaster General, U.S. Postal Service,* 585 F.Supp. 1374 (D.D.C.1984), *aff'd,* 774 F.2d 510 (D.C.Cir. 1985). This time-filing requirement is not a jurisdictional prerequisite to suit in a federal district court, but it operates like a statute of limitations that is subject to waiver, estoppel, and equitable tolling. *Kizas v. Webster,* 707 F.2d 524, 543 (D.C.Cir.1983) (*quoting Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132–33, 71 L.Ed.2d 234 (1982)).

■ Mr. Albritton asserts that his claims with respect to the December 1991, August 1992, and May 1993 non-promotions should not be dismissed because they are part of a pattern of continuing discrimination on the part of the defendant. If Mr. Albritton establishes a continuing violation of Title VII, the claims for which he did not file timely administrative charges will not be time-barred.[5] *Shepard v. Adams,* 670 F.Supp. 22, 24 (D.D.C.1987). The rationale for the continuing violation theory is to provide a plaintiff with a remedy for past actions that continue to have a present effect. *Scott v. Claytor,* 469 F.Supp. 22, 25 (D.D.C.1978).

■ The question of whether a violation is continuing must be addressed on a case-by-case basis. *Delaware State College v. Ricks,* 449 U.S. 250, 258 n. 9, 101 S.Ct. 498, 504 n. 9, 66 L.Ed.2d 431 (1980); *Webb,* 864 F.Supp. at 183; *Shepard,* 670 F.Supp. at 24. To establish a continuing violation, the plaintiff must demonstrate either a series of related discriminatory acts, of which one or more fall within the limitations period, or the maintenance of a discriminatory system both before and during the limitations period. *Palmer v. Kelly,* 17 F.3d 1490, 1495 (D.C.Cir. 1994) (internal citations omitted); *Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982). Moreover, a plaintiff who claims a continuing violation must allege a nexus between the remote claims and those claims which are timely-filed.[6] The critical

---

4. 29 C.F.R. § 1613.214(a) requires that an agency accept a complaint only if the complainant has brought, to the attention of an EEO counselor, the matter causing the complainant to believe that he or she has been discriminated against. This notification requirement must be brought within 30 days of the alleged discriminatory event, the effective date of an alleged discriminatory personnel action, or the date that ... he knows or reasonably should have known of the discriminatory event or personnel action. After October 1, 1992, EEO regulations require that an individual contact an EEO counselor within 45 days. 29 C.F.R. § 1614.105(a).

5. The time requirement was extended to 45 days as of October 1, 1992. *See* 29 C.F.R. § 1614.105(a).

6. *See Milton v. Weinberger,* 645 F.2d 1070, 1076–77 (D.C.Cir.1981) (holding that to be continuing, the discrimination may not be limited to isolated incidents, but must pervade a series or pattern of events which continue into the filing period); *see*

question is therefore whether any present violation exists. *Id.* (*citing Evans,* 431 U.S. at 558, 97 S.Ct. at 1889).

■ In order to save claims for which an administrative claim was not timely-filed, the plaintiff must properly allege the continuing violation theory in both the administrative complaint and the formal complaint before the court. *Caliendo v. Bentsen,* 881 F.Supp. 44, 47 (D.D.C.1995) (*citing Graham v. Adams,* 640 F.Supp. 535, 538 (D.D.C.1986)). However, because administrative complaints are enforced by laypersons, who are unaccustomed to preparing pleadings, administrative complaints should be read liberally. *Caliendo,* 881 F.Supp. at 47. Mr. Albritton properly alleged the continuing violation theory in his administrative complaint and his complaint presently before this court.[7]

### 1. Timely–Filed Present Violation

■ In analyzing an alleged continuing violation, the court first examines whether an actual violation occurred within the statutory period. *Palmer,* 17 F.3d at 1496; *Evans,* 431 U.S. at 558, 97 S.Ct. at 1889. There must be a present violation, not merely the effects of a past discriminatory event, for which the plaintiff has made a timely administrative charge. *Id.; Ricks,* 449 U.S. at 257, 101 S.Ct. at 503–04; *Scott,* 469 F.Supp. at 25. In an employment discrimination case, the plaintiff has the burden to plead and prove any equitable reasons for failing to meet the requirement of bringing the Title VII complaint to the attention of the agency's EEO counselor within the mandated time frame. *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 94–95, 111 S.Ct. 453, 456–57, 112 L.Ed.2d 435 (1990); *Saltz v. Lehman,* 672 F.2d 207, 209 (D.C.Cir.1982).

Mr. Albritton did not contact an EEO counselor within 30 days of his failure to be promoted in December 1991, August 1992, and May 1993. He does not contend that he was unaware of the 30–day time limit or that circumstances prevented him from timely presenting his claims. Mr. Albritton, however, did contact an EEO counselor on September 1, 1994, after the PEEB had again refused to promote him on August 6, 1994. Thus, the charge concerning the PEEB's refusal to promote him in August 1994 was timely filed.

### 2. Substantially Related Events

■ The second question in the continuing violation analysis is whether or not the discriminatory act was either a part of a series of related discriminatory acts or was caused by a discriminatory system in effect both before and during the limitations period. *Palmer,* 17 F.3d at 1496; *Shepard,* 670 F.Supp. at 25.[8] To determine whether discriminatory acts are discrete and isolated or are sufficiently related to constitute a series of related discriminatory acts, courts widely use a three-part test set forth in *Berry v. Board of Supervisors of LSU,* 715 F.2d 971, 981 (5th Cir.1983). *See Shepard,* 670 F.Supp. at 25. Three questions comprise this test: (1) do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? (2) with regard to the frequency of the acts, are the alleged acts recurring or more in the nature of an isolated decision? (3) does the act possess a degree of finality that would alert an employee of a need to assert his or her rights? If the employee could not perceive discrimination until a series of acts occurred, then the employee should be able to plead the earlier, time-barred claim. *See Berry,* 715 F.2d at 981; *Shepard,* 670 F.Supp. at 25.

In this case, Mr. Albritton's allegations satisfy the three elements of the continuing violation test. First, Mr. Albritton alleges that all of the non-promotions involved the same type of discrimination, i.e. racial. Specifically, he maintains that due to his race,

---

*also Graham v. Adams,* 640 F.Supp. 535, 538 (D.D.C.1986).

**7.** *Compare Milton,* 645 F.2d at 1076 (finding no continuing violation theory when female plaintiffs failed to allege the theory in their complaint after unsuccessfully applying on six occasions for a position as an EEO officer).

**8.** The defendant mainly focuses on the fact that the plaintiff cannot demonstrate that the USPTO's promotion policies were part of a discriminatory policy or system. The plaintiff, however, makes no such allegation.

the PEEB altered its review standards when considering his three applications for promotion. Moreover, Mr. Albritton applications were for the same position and were rejected by the same review board, the PEEB.[9] Second, as the promotion denials occurred at ten to fifteen month intervals, they may indicate a recurring pattern of discrimination.[10] Third, Mr. Albritton may not have been aware of the PEEB's discriminatory actions until it had denied him the promotion four times because the PEEB continually provided Mr. Albritton with additional opportunities to apply for the promotion.[11] Consequently, Mr. Albritton contends that, although ultimately unsuccessful, he attempted to satisfy the changing standards the PEEB set forth. These facts establish that the alleged discriminatory behavior involved the same racial discrimination, occurred repeatedly, and would not have alerted an employee of his duty to assert his right after a single denial. The court therefore concludes

that Mr. Albritton has properly alleged that a nexus exists between the past events and the timely-filed claim.[12] Mr. Albritton has properly alleged a continuing violation thereby vesting this court with jurisdiction over his claims relating to his December 1991, August 1992, and May 1993 non-promotions.

## C. Failure to Promote in August 1994

■ The defendant contends that it has articulated a legitimate non-discriminatory reason for not promoting Mr. Albritton in August 1994. The defendant does not allege that Mr. Albritton has failed to establish a *prima facie* case of discrimination.[13] Once a plaintiff succeeds in establishing the *prima facie* case, the burden then shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The employer must only produce admissible evidence which would allow the trier of fact to rationally conclude that the decision was not motivated

9. *Compare Webb*, 864 F.Supp. at 183 (rejecting the continuing violation theory where the plaintiff was denied more than 100 promotions for different positions and where the selecting officials differed for each position); *see also Scott*, 469 F.Supp. at 25 (rejecting the continuing violation theory for those denials of promotion for different jobs by different supervisors but sustaining those claims for non-promotions for the same position by the same supervisor).

10. *See Shepard*, 670 F.Supp. at 24, 25 (permitting claims based on a continuing violation for three non-promotions separated by two year intervals).

11. Specifically, the plaintiff refers to December 1991. At that time, the PEEB had determined that the original Ranking Official statement submitted by Mr. Urynowicz was stale. The PEEB therefore requested that the plaintiff submit a second Ranking Official Statement. After the plaintiff submitted the second statement, the PEEB determined that it did not persuasively indicate that the plaintiff had the necessary qualifications for the position. The plaintiff asserts that the official materials regarding Ranking Official Statements do not mandate that the statement be persuasive, only that it be truthful. The plaintiff therefore asserts that the PEEB discriminatorily utilized this subjective element only against an African–American applicant.

The plaintiff also asserts that the PEEB used discriminatory, heightened review standards with respect to his third and fourth applications. When the PEEB reevaluated Mr. Albritton's application packet for a third time in May 1993, the PEEB proposed a signatory review of the plain-

tiff's work. The plaintiff asserts that such a review was reserved only for examiners at a lower grade than the plaintiff, and thus, was unfairly used against him. The plaintiff further asserts that, in the August 1994 review of his fourth application packet, the PEEB discriminatorily requested that the plaintiff's recently appointed Group Director personally review several of the plaintiff's cases.

12. *See Scott*, 469 F.Supp. at 27 (concluding that three denials of the same with-in grade increase by the same supervisor are sufficiently related); *see also Shepard*, 670 F.Supp. at 24 (denying a motion to dismiss based on a finding of a continuing violation where the plaintiff alleged three same-grade non-promotions); *Graham*, 640 F.Supp. at 539 (denying a motion to dismiss where the plaintiffs alleged a sufficient connection between the alleged discriminatory actions by immediate supervisors and a reduction in force by agency officials).

13. In order for a plaintiff to establish a *prima facie* case of disparate treatment, the plaintiff must offer evidence that: (1) he is the member of a minority group; (2) he applied and was qualified for a promotion; (3) despite his qualifications, he was rejected; and (4) other employees of similar qualifications who were not members of the protected group were promoted at the time the plaintiff's request was denied. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C.Cir.1981); *Shepard*, 670 F.Supp. at 25.

by discriminatory animus. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981). If the defendant rebuts the presumption of discrimination by illustrating that the plaintiff was rejected for a legitimate, non-discriminatory reason, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons claimed by the defendant are not the true reasons for the decision but merely a pretext for discrimination. *Id.* at 252–254, 101 S.Ct. at 1093–94; *Batson v. Powell,* 912 F.Supp. 565, 577 (D.D.C.1996).

The defendant maintains that Mr. Albritton has failed to establish that the defendant's legitimate, non-discriminatory reason for denying Mr. Albritton a promotion is a pretext. The defendant claims that the PEEB denied Mr. Albritton's application for promotion because he could not demonstrate that he possessed the skills, knowledge, and ability required of a Senior Examiner. Specifically, the defendant asserts that after conducting a performance review of Mr. Albritton's work, both a PEEB member and Mr. Albritton's Group Director, Mr. Rolla, confirmed that Mr. Albritton was not performing at a consistently high level to justify his promotion to the GS–15 Senior Examiner position.

Conversely, Mr. Albritton asserts that the PEEB's requirement to have his daily work product reviewed was not an attempt to help him but a pretext to facilitate the denial of his application. He asserts that the PEEB had never engaged in such conduct with anyone else and was attempting to find a reason to deny him the promotion. Mr. Albritton further claims that the PEEB's reasons for not promoting him were in direct conflict with the ratings and opinions of his work by his Group Director, his Supervisor, Ranking Officials, and other experts and examiners. Mr. Albritton, in accordance with the promotion procedures, submitted evidence that his Group Director, as well as his Supervisory Primary Examiner, other patent examiners, and personnel within the Patent Documentation area recognized him as having superior technical expertise. In addition, Mr. Albritton points out that his Group Director, Mr. Kelly, submitted a fourth application on his behalf because he believed that Mr. Albritton had made impressive progress in the areas which the PEEB had previously advised Mr. Albritton that he needed to improve.

Moreover, Mr. Albritton asserts that the PEEB utilized subjective elements not based on merit to evaluate his application. For example, with respect to his first application, the PEEB dismissed the testimonials submitted on Mr. Albritton's behalf because they appeared to have been solicited in violation of the PEEB's procedures. Mr. Kelly, however, provided information to the PEEB to illustrate that the testimonials were wholly spontaneous and unsolicited and thus in conformity with PEEB standards. Upon review of Mr. Kelly's submissions, the PEEB concurred with Mr. Albritton and accepted the testimonials. In addition, when the PEEB dismissed his second application, it contended that Mr. Albritton's Ranking Official statement was not persuasive. Mr. Albritton asserts, however, that the official materials regarding a Ranking Official statement only mandate that the statement be "truthful" and not that it be "persuasive." [14] He therefore avers that the PEEB improperly utilized subjective review standards that were not formally required. Viewing the facts in the light most favorable to him, the court concludes that Mr. Albritton has produced some objective evidence that could lead a reasonable juror to conclude that the defendant's proffered reasons for denying him the promotion were pretextual.[15]

### D. The August 3, 1994 Claim is Not Moot

■ The defendant asserts that since Mr. Albritton retired from federal service on September 3, 1994, there is no reasonable expectation that the alleged discrimination in the

---

**14.** Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment, Ex. A.

**15.** *See Hayes,* 902 F.Supp. at 265 (rejecting summary judgment when the plaintiff presented evidence that he had good recommendations and qualifications and the selection official utilized factors not stated in the job search).

evaluation of his eligibility for Senior Examiner status will recur. The defendant also asserts that if the PEEB had granted Mr. Albritton the promotion to Senior Examiner on August 3, 1994, it would only have occurred approximately nine days prior to his retirement. The defendant, therefore, argues even a promotion retroactive to this period would have no appreciable effect on his retirement pay. As a result, the defendant contends that Mr. Albritton's claim is rendered moot.

 A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (*quoting Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950–51, 23 L.Ed.2d 491 (1969)). A case becomes moot only if: (1) there is no reasonable expectation that the alleged violation will recur; and, (2) if interim relief and events have completely and irrevocably eradicated the effects of the alleged violation. *Id.* When both of these conditions are met, the case is moot because neither party has a legally cognizable interest in the final determination of the questions of fact and law. *Id.*

Mr. Albritton has filed suit seeking declaratory and injunctive relief in addition to reinstatement to the GS–15 Senior Examiner level, back pay, compensatory damages, and attorney's fees. He retired in good standing and could be restored to a GS–14 classification job and subsequently promoted. Mr. Albritton maintains a cognizable interest in the resolution of this suit since he could be awarded compensatory damages, back pay and other equitable relief as well as attorney's fees. Furthermore, Mr. Albritton's retirement did not eradicate the effects of the PEEB's alleged discriminatory conduct against him. *See Ellzey v. Espy,* 1995 WL 6277, *6 (E.D.La.1995). The fact that the plaintiff voluntarily removed himself from his position at the Patent Office does not affect the justiciability of his claimed civil rights violations that preceded his decision to retire.[16] The court therefore concludes that Mr. Albritton's pre-retirement discrimination claims are not rendered moot by his retirement.

Accordingly, it is this 15 day of August 1996,

**ORDERED** that the Defendant's motion to dismiss or in the alternative for summary judgment, be and is hereby **denied.**

**SO ORDERED.**

---

16. *See Emory v. Secretary of the Navy,* 819 F.2d 291, 294 (D.C.Cir.1987). In *Emory,* the plaintiff, a retired Naval officer, brought an action seeking declaratory and injunctive relief for alleged discrimination that resulted in his non-selection for promotion. The Court held that the plaintiff's retired status was not a bar to the district court fashioning some relief if it deemed that his claim was meritorious; *see also Richardson v. Wiley,* 569 F.2d 140, 141 (D.C.Cir.1977) (holding that an employee's discrimination action was not rendered moot as a result of the employee's promotion subsequent to the filing of his complaint).